### SMITH v. CITY OF ROCHESTER.

*(Supreme Court, General Term, Fifth Department.   June 23, 1892.)*

DEFECTIVE SIDEWALKS—NOTICE.

The charter of the city of Rochester, section 40, confers upon the common council power to regulate the use and cumbering of the streets.   Section 149 makes the members of the executive board commissioners of the streets, and provides that they shall have control of all improvements and repairs ordered by the council, and may appoint a superintendent.   Chapter 14, § 218, provides that the city shall not be liable for any injury caused by defective sidewalks, unless actual notice of the condition thereof has been given to the officers having charge of the streets.   *Held*, that an inspector, whose duty it is merely to report the condition of the sidewalks to the board, is not an officer having charge of the streets, and the knowledge of such person is not imputable to the board until brought to their attention.

Appeal from circuit court, Monroe county.

Suit by Florence A. Smith against the city of Rochester to recover for personal injuries.   There was a judgment of nonsuit, and plaintiff then moved for a new trial upon exceptions ordered to be heard in the first instance at the general term.   Denied.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*Walter S. Hubbell*, for plaintiff.   *C. D. Kiehel*, for defendant.

MACOMBER, J.   At the trial of this action the plaintiff was nonsuited upon the ground that no notice had been given to the authorities of the city of ·Rochester of the dangerous or unsafe condition of the street upon which the injuries complained of were received by the plaintiff.   The action is one of negligence, for bodily injuries sustained by the plaintiff on the 2d day of June, 1888, between the hours of 9 and 10 in the evening, while walking on a public sidewalk on the west side of North avenue.   A stone walk which had lain in the place where the plaintiff was injured had been removed by the owner of the abutting premises, and excavations made underneath, and the same covered by planks which ran lengthwise of the walk, and which were not securely fastened, so that they parted, leaving openings between them. A certain amount of brick and rubbish was piled at one side of the walk, and it was contended that the plaintiff was obliged to use these planks in order to pass along.   While she was pursuing her course, to all intents in a careful manner, her foot and leg went between the planks, whereby she received quite serious personal injuries.

The motion for a nonsuit was based upon the following provisions of the city charter, being section 218 of chapter 14 of Laws 1880: "The city of Rochester shall not be liable for any injury caused by such sidewalks being out of repair, or unlawfully obstructed, or dangerous from snow or ice, unless actual notice of the unsafe or dangerous condition thereof has been given to the city officers having charge of the highways, a reasonable time before the happening of any such injury."   That this provision of the charter is constitutional, since the recent decision of the court of appeals in the case of *McNally* v. *City of Cohoes*, 127 N. Y. 350, 27 N. E. Rep. 1043, following, in principle, the case of *Todd* v. *City of Troy*, 61 N. Y. 309, admits of no doubt.   The learned counsel for the plaintiff, however, at the circuit, made an offer of evidence of such a character as that, as he now claims, should have permitted him to go to the jury upon the question whether or not actual knowledge or notice of the condition of this walk had not been brought home to the executive board of the city of Rochester.   Upon the trial he offered to prove, by a witness who was called, that he was one of the sidewalk inspectors of the city at the time of the accident in question, and that, in the performance of his duty as such inspector, he passed by this place, and saw its condition on the day of the accident, and on each day for weeks prior thereto; that he was appointed such inspector by the executive board, and that his

duty was, among other things, to examine sidewalks, and ascertain for the executive board whether the same were out of repair, or in a dangerous condition, or were obstructed in any way. The learned justice at the trial asked if the counsel meant that the inspector had informed the executive board of the condition of the sidewalk. Counsel said that he was not prepared to show that, and did not expect to do so.

The question, therefore, urged upon us is whether or not the knowledge of this inspector can be ascribed to the members of the executive board, and, if so, whether or not the positive provisions of the charter, above quoted, can be thus avoided. This depends, primarily, upon the question whether or not this sidewalk inspector was a city officer having charge of highways. That question can be answered, in our judgment, but one way, and that decidedly in the negative. By subdivision 7 of section 40 of the charter, power is given to the common council "to regulate and prevent the use and cumbering of streets, avenues, walks, public squares, lanes, alleys, bridges, aqueducts, wharves, basins, or slips, in any manner whatever." By the 149th section, "the executive board shall have * * * the superintendence and control of all work or improvements ordered by the common council, and shall have the control of the construction, improvement, repair, and cleaning of the streets, alleys, sewers, and bridges, except bridges owned by the state of New York, and shall have control of the expenditure of the funds therefor. * * * The members of said board shall give their entire time to the duties of the office, and shall be the commissioners of highways of said city. The executive board may appoint, and at pleasure remove, a superintendent of streets, fix his compensation, and prescribe his duties." Under these provisions of the charter, it is clear that this inspector was not a superintendent of streets appointed by the executive board, but that he was, as the description of his duties necessarily implies, a subordinate,—a means adopted by the members of the executive board to bring home to them knowledge or notice of the actual condition of the streets. It would doubtless be difficult for the members of the executive board, personally, to ascertain, without such aids, the actual condition of the sidewalks throughout the city, but the knowledge of the inspector cannot be imputed to the members of the executive board under any rule of law with which we are acquainted. The members of the executive board are themselves but mere agents of the municipality, and the statute has seen fit absolutely to say that the municipal corporation shall not be liable for injuries of this character unless actual notice has been brought home to the executive board. This, of course, does not mean that a formal notice shall be served upon each or any member of the board; it is sufficient that they have knowledge of the existence of the defects a reasonable time before the injuries complained of were received, to enable an action to be maintained. But the knowledge of any other person whom they may employ is not imputable to the board, until it is in some way brought to their attention. The learned counsel for the plaintiff makes sundry citations from the work of Wade on Notice; but, with due deference, we are of the opinion that they do not apply to cases of this character. They relate solely to matters pertaining to the principle of the knowledge possessed by the agent, and do not relate to the matter here in controversy. Indeed, we find nowhere in that book reference to any question arising under a provision in a municipal charter of the character here appearing. We are of the opinion, therefore, that the nonsuit was correctly granted, and it follows that the exceptions taken thereto should be disallowed, and judgment ordered thereon for the defendant.

Plaintiff's motion for a new trial on exceptions denied, with costs, and judgment ordered for the defendant on the nonsuit. All concur.