THERESA ELIAS, Plaintiff, *v.* THE CITY OF ROCHESTER, Defendant.

*Negligence — what is " actual notice" to a city board of a defect in a street, which will sustain an action for injury caused thereby.*

Notice of a defect in a street given to an employee of the executive board of the city of Rochester — the body having charge of the streets — at his station in the outer office of the board, constitutes a sufficient compliance with section 218 of the charter of the city, which provides: "The city of Rochester shall not be liable for any injury caused by such sidewalk or any roadway being out of repair, or unlawfully obstructed, or dangerous from snow or ice, unless actual notice of the unsafe or dangerous condition thereof has been given to the city officers having charge of the highways a reasonable time before the happening of any such injury," where it appears that it was a long-established custom, recognized by the executive board, for such notices to be given to any employee of the board in attendance on the outer office, and that the employee· in question had frequently received complaints.

Evidence that the notice was given to the clerk during the time such notices were usually given; that he took a pad and commenced to write, and while writing asked the complainant where the defect was, and after receiving the information continued to write, warrants a finding that the clerk made a memorandum of the notice, and that such notice was given to the executive board. McLENNAN, J., dissented.

MOTION by the plaintiff, Theresa Elias, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance, upon the dismissal of the complaint by direction of the court after a trial before the court and a jury at the Monroe Trial Term.

The plaintiff was injured by falling on a defective sidewalk on Smith street in the city of Rochester, October 24, 1896. Section 218 of the city charter (Chap. 14, Laws of 1880, as amd. by Laws of 1890, chap. 561, § 27) provides: " It shall in all cases be the duty of the owner of every lot or piece of land in said city to keep the sidewalks adjoining his lot or piece of land in good repair, and to remove and clean away all snow and ice and other obstruction from such sidewalk. The city of Rochester shall not be liable for any injury caused by such sidewalk or any roadway being out of repair, or unlawfully obstructed, or dangerous from snow or ice, unless actual notice of the unsafe or dangerous condition thereof has been given to the city officers having charge of the highways a reasonable time before the happening of any such injury."

The witness Wier testified that in June, 1896, he noticed the defect in the walk where the accident occurred ; that the walk was of plank and there was a hole about three or four feet in length and three or four inches wide caused by a piece of plank being out ; that he went to the office of the executive board and complained to a clerk in attendance and he thus describes what took place there : " I went into the reception room where the clerk was. There was a counter running across in front. There were two persons behind the counter. This gentleman had his hat and coat off ; the other gentleman was writing at a table, I think. *This one with his hat and coat off came to the counter.* This was in the latter part of July or first of August. This gentleman had been behind the counter four or five weeks when I had been there. I asked him if the members of the Executive Board were busy and he said they were. I said there was a defective walk on Smith street that I nearly broke my neck at. He did some writing and then asked where it was, and I told him on Smith street between Grape and Magne. I told him there was a piece out of the walk, that I caught my foot in there. Then he did some writing, and came back and asked this question, while he was writing, and then went back to write again, and I passed out of the office."

Later the witness testified that this complaint was made in 1895, but he stated that the defect he described to the clerk continued without repair until after the accident to the plaintiff and he identified this as the same place where plaintiff received her injuries.

The precise point of the nonsuit apparently was that the complaint made to the clerk by Wier was not actual notice within the city charter.

*G. L. Meade*, for the plaintiff.

*Porter M. French, Corporation Counsel*, for the defendant.

SPRING, J. :

To the executive board of the city was commited the charge of the streets. Its duties were numerous and the details were necessarily intrusted to agents to carry out and to execute its orders. It did not in fact ordinarily receive complaints of defective streets. The practice appears to have been that these notices were given to

clerks. The board was in session daily in a room provided for that purpose. Its meetings were to consider and perform the general duties devolving upon it. These meetings were not public. The board was not in session to enable citizens to run in before it and advise its members personally that a stone was upheaved on the sidewalk in Main street, that there was an accumulation of snow on East avenue, or a plank out on Smith street. The whole time of the board would be occupied in listening to petty complaints of that character if the " actual notice " contemplated by the statute was restricted to a personal interview with the board. To give practical effect to this requirement the board had an outer office. In this were clerks and employees, and to this room the public were admitted. Each individual who had a complaint to make as to the condition of the streets, made it to one of these employees who received them on behalf of the executive board. Nor was any particular one of these employees especially charged with the perform-ance of this duty. Any one of them in attendance received these complaints. Originally they were noted down on a blotter prepared for the purpose. Later this was abandoned and a pad used. This room was an adjunct of the main office, and the proof is that it was here, and to these employees without variation, that the notice of defective streets was given. By long practice, by unquestionable recognition, the board had accepted this as the mode by which the actual notices should be given, so that the public by its action was led to believe that a notice so tendered was a compliance with the statute.

The board was responsible for the mode of carrying out the statute. It first put a practical construction upon it and the public conformed to it. The evidence shows that Roswell Clark was employed in this office by the executive board. Complaints were frequently made to him as the employee or representative of the board. In fact they were made to whomsoever took them behind this counter. The complainant in every case would not know each clerk or employee, or his relation to the board. He only knew that this was the place to present complaints to the board, and the medium was the clerk or attendant behind the counter. The notice in this case was given the same as in others. There was no departure from the uniform course of procedure. In *Sprague* v. *City of Rochester*

(159 N. Y. 20) this same provision of the charter was under discussion. At the time of the alleged notice in that case there was a superintendent to whom was generally committed the actual control of the streets as an administrative function. There were, however, two foremen in charge of sidewalks, and a like number looking after the streets, and under each of these were inspectors who did the work of repairing, and without communicating with the executive board. The notice was given to one of these inspectors, and the court held this was adequate. They were not officers provided for by the charter. They were simply employees provided for by the executive board to make effective its execution of the obligations intrusted to it. As was said in that case at page 26 : " While the foremen may not be city officers in one sense, they are in another. * * * The duties of the board are so numerous and important as to embrace a large part of the government of the city. Obviously the Legislature did not contemplate that these three men should look closely after details, but that they should take general charge, give general directions, and to a great extent delegate their powers to subordinates. In no other way could the work of the city be done. It is not reasonable to believe that the Legislature intended that personal notice of every defect in the entire system of sidewalks. should be given them in order to enable citizens to obtain redress for injuries owing to a failure to repair," and the court further held that the section should receive a strict construction against the city, as it creates a new rule in limitation of the general liability imposed upon the municipality. As I view that case, it is in line with the present one. The foreman of the streets possessed power delegated by the board, and his official functions were recognized by the body under whom he acted. In this case Clark was an employee of the board, acting within the recognized scope of his authority, at the place provided by the board, and in the manner usual in the execution of duties of this kind in that office. If an employee on the street can receive actual notice on behalf of the board, because as a subordinate he actually makes repairs, by parity of reasoning, an employee in the office, chargeable with that duty, can likewise bind the city by accepting notice of the defect.

The case of *McNally* v. *City of Cohoes* (127 N. Y. 350) simply held that the fact that the superintendent of streets passed over

the defective walk did not meet the actual notice required by the city charter. There was no actual notice to any one in that case. The object of the provision was to obliterate the doctrine of constructive notice, and there is no contention in this case that the requirement of actual notice can be disregarded. The pivotal point is whether the notice proved comes within a reasonable construction of the statute. Was it " actual notice " within the fair intendment of the law?

Again, it is a circumstance to be observed that the charter expressly vests authority in the board to " employ such assistance \* \* \* as it may see fit " (Laws of 1880, chap. 14, § 152). This explicit warrant implies what is obvious, that the board, with its important functions, was to perform them largely through its agents or servants.

While the law seems to me clear that this is the reasonable interpretation of the statute, it is unnecessary *to go to that extent in this* case. The proof shows that the notice was given to Clark in the office during the time such notices were accustomed to be given ; that he took one of the pads and commenced to write, and during his writing asked of the complainant what particular part of the walk was defective, and the information was given and he continued to write. Two facts the jury might find from what occurred in the office : *First,* that Clark made a memorandum of the complaint ; and, *second,* that this was turned over to the board. Undisputed, the presumption is that the usual practice was conformed to, or, at least, it was for the jury to determine whether the notice reached the board or not. The board possessed the knowledge. It was for its members to acquaint the jury with the real fact as to receiving the notice, if its actual reception were important. The jury, under the evidence as it stood, could have found that the board was made the final repository of this information in accordance with the mode in vogue by its assent. It was error to take that question of fact from the jury.

The plaintiff's exceptions should be sustained, and a new trial ordered, with costs to the plaintiff to abide the event.

All concurred, except MCLENNAN, J who dissented in an opinion.

McLENNAN, J. (dissenting):

The evidence on the part of the plaintiff tends to show that on the 24th day of October, 1896, while walking upon the sidewalk on the north side of Smith street, in the city of Rochester, N. Y., and without any fault or negligence upon her part, she stepped into a hole in a plank in the sidewalk, tripped and fell, and sustained injury; that the walk was in a defective and dangerous condition, had been for several months prior to the accident, and that by a proper inspection its condition and the defect which occasioned the injury could have been readily discovered.

Section 218 of the charter of the city of Rochester, being chapter 14 of the Laws of 1880, as amended by chapter 561 of the Laws of 1890, provides as follows: "The city of Rochester shall not be liable for any injury caused by such sidewalk or any roadway being out of repair, or unlawfully obstructed or dangerous from snow or ice, unless actual notice of the unsafe or dangerous condition thereof has been given to the city officers having charge of the highways a reasonable time before the happening of any such injury."

The charter also provides for an executive board, consisting of three members, which has the exclusive supervision of the streets and sidewalks of the city, and is charged with the duty of keeping them in proper repair. Such board or its members are the only "city officers having charge of the highways."

The only question which arises upon this appeal is, had actual notice of the defective condition of the sidewalk in question been given to the executive board previous to the accident, within the meaning of the statute?

Unless the board had knowledge of the defect, or such notice had been given prior to the accident, no recovery can be had. (*Sprague* v. *City of Rochester,* 159 N. Y. 20; *McNally* v. *City of Cohoes,* 127 id. 350; *Smith* v. *City of Rochester,* 46 N. Y. St. Repr. 727; *Smith* v. *City of Rochester,* 79 Hun, 174.)

The plaintiff contends that the evidence tends to show that the required notice had been given.

It appears that during the year 1896 and prior thereto the executive board of the city of Rochester had its offices in the city hall. They consisted of a room for the members of the board; a large room adjoining, divided by a railing or counter, one side of

which was used as a waiting or reception room for people having business with the office, and the other occupied by the clerks, bookkeepers and other employees of the board, and a room accessible from both for the use of the clerk or secretary of the board.

The plaintiff called the clerk of the board to prove its method of doing business in cases where complaint was made, or it was notified of any defect in the highways of the city. He testified in substance that his duties required him to keep a record of the proceedings of the board, to see that its instructions were carried out by the subordinate clerks and assistants ; that he had general control of the office ; received any communication addressed to the board, and represented the members in their absence ; that there were no set rules for the guidance of the clerks or employees of the office ; the general course of business under the supervision of the board established the rules.

The witness stated that at one time there was a complaint book — a blotter — kept in the office, but thought its use was discontinued prior to 1895 ; that while in use it was generally lying around on the counter in the office ; that when the public came to make a complaint, or to do any business with the office, they entered the general reception room outside of the counter, and there communicated with some of the clerks behind the desk, but whether such complaints were entered in the complaint book or blotter he was unable to state ; that the practice was, when a citizen complained of a defective sidewalk, to make a memorandum of it, and call the attention of the employee to it who had charge of that specific class of work ; that was done sometimes by the clerk and sometimes by his assistant ; that it was his duty, in a general way, to become aware of those complaints from the memoranda. The witness stated : " The course of business was to receive those complaints, and they generally came to my attention, as the men came to me for directions from the board as to what was to be done. The course of business was for any citizen to make a complaint, and it came to my attention if it didn't come to the attention of the board. This was the course of business which the board had established for this kind of work — which existed during my connection with the board with reference to receiving complaints of defective walks, so far as I have described it."

The witness stated that after he moved his office across the hall, which he thought was prior to January, 1896, he kept a pad upon his desk upon which he made a memorandum of any complaint about defective sidewalks, to assist his memory; the board had access to such papers and to all others on his desk. Sometimes a citizen would go to the street department office and make complaint to a clerk in that office; in such case that clerk would inform the witness.

During 1895 and 1896 the members of the board were in and about the offices pretty much all day; they did not inspect the work of the subordinate employees in the office, but trusted that to the chief clerk; they did not look after the details; they usually came to the office at half-past nine or ten o'clock and remained until from three to five o'clock in the afternoon.

The witness stated that a Mr. Roswell Clark had been connected with him in the office for three or four years as assistant stenographer and typewriter; that he was not his private assistant, but that if he wanted anything done that Clark could do, or wished to convey any message, he was there to do it; that all the petty complaints were managed by the witness, the repairs directed by him with the approval of the board; that the general run of things about the streets was under his management. The practice was to make a memorandum of the complaint on a pad, call the attention to it each day of the man who had particular charge of that work, give orders in respect to it and then destroy the memoranda. There was no rule requiring such course of business, but that was the custom in the conduct of that branch of the business; no formal action was ever taken by the board authorizing such method, but the members knew of it and they had access to all the records and to all memoranda and papers upon the clerk's desk, or kept by him or any other employee of the board.

A Mr. Wier, called as a witness by the plaintiff, testified upon his direct examination that in June, 1896, he discovered that the walk in question was out of repair, and that the particular defect which caused the accident to the plaintiff then existed; that in July or August following he was seeking an appointment as sidewalk inspector by the executive board, and went to the office every day for a month or six weeks for that purpose; that on one occasion he went into the reception room and saw two persons behind the coun-

ter back of the railing, one of whom he identified upon the trial as Roswell Clark, who was the assistant stenographer and typewriter of the clerk of the board. The witness stated that the following conversation took place between himself and Clark: "I asked him if the members of the executive board were busy, and he said they were. I said there was a defective walk on Smith street that I nearly broke my neck at; he did some writing, and then asked where it was, and I told him on Smith street between Grape and Magne. I told him there was a piece out of the walk; that I caught my foot in there; then he did some writing and came back and asked this question while he was writing, and then went back to write again and I passed out of the office."

The witness testified that he had seen Clark at the desk a great many times, and had heard him answering questions asked by people who came to the office on business; that he made a great many inquiries himself during that time; that once when he went to the desk and asked to see a member of the board Clark asked what his name was, wrote it on a card and then rapped at the door of the room of the board, and then informed the witness that the board was busy.

The foregoing is the substance of all the testimony, and it is stated most favorably to the plaintiff, which it can be claimed tends to show that the executive board had actual knowledge of the defect in the walk which caused the accident.

It may be said in passing that, although the witness Wier testified positively upon his direct examination that he gave the information in July or August, 1896, and fixed the year from the fact that Barnard, Scroth and Curran constituted the executive board at the time, from whom he was seeking employment, and fixed the date when he discovered the defect by the fact that at the time he was seeking to obtain insurance from the plaintiff, yet when he discovered that those men were not members of the board in 1896, but were such members in 1895, he changed his testimony and stated that the information given by him was given and the defect discovered in 1895, nearly a year and a half before the accident occurred; and he testified that the plank produced upon the trial, which had concededly been in use during that length of time, was in the same condition that it was when he discovered the defect.

Without passing upon the weight of the testimony or its improbability, we are to determine whether the notice claimed to have been given by the witness Wier to Clark, who was the assistant stenographer and typewriter of the clerk of the board, was actual notice to the " city officers having charge of the highways," within the meaning of the statute.

Concededly, there is no proof that any member of the board, or its clerk, knew or had been given " actual notice of the unsafe or dangerous condition " of the sidewalk. At most the evidence only shows that notice of the defect was given to the assistant stenographer and typewriter of the clerk of the board, who at the time was at work at a desk in the main office, and who was in the habit of answering questions asked by people who had business there, and the notice given to him consisted merely of a casual remark made by a person who came upon other business. There is no proof that Clark ever informed the board of the notice; that he was required so to do, or that it was the purpose and intention of Wier that such information should be communicated. Clark was not a city officer; he did not have charge of the highways; had no authority to make repairs, and so far as appears had never informed the board of any complaint made to him in respect to the highways of the city, nor even that any other complaint had ever been made to him, or notice of any other defect ever given to him.

The manner of conducting the business in the office relating to complaints in no manner clothed Clark with authority to receive notice of defects for and on behalf of the. board. If he had communicated the information which he received to the members of the board, the city would have been bound by it, but the rights of the city can be in no manner affected because one of its employees neglected or refused to impart information possessed by him to his superiors.

The statute in terms declares that the defendant shall not be liable for injuries occasioned by defects in its highways, unless the executive board had actual notice of such defects a reasonable time before the happening of such injury, and it is not within the power of the board, either by rule or custom, to make notice to an employee in no way in charge of the highways, equivalent to the notice required by the statute.

The question of estoppel is not involved. If the plaintiff, or some one in her behalf, had given the notice; had relied upon the apparent authority of Clark to receive it, and had been justified in believing that notice to him was notice to the board, or if the evidence showed that Clark had been designated to receive notices of the character in question, and to communicate them to the board, or had been in the habit of so doing to such an extent that the public generally were justified in adopting such method of giving notice, or that the members of the board were inaccessible to the public, a different question would be presented, but nothing of that kind appears. In fact it nowhere appears that Clark was ever notified of any defect in the highways or sidewalks, except upon the occasion testified to by Wier, or that he was authorized by the board to receive such notices.

If notice to Clark can be held to be actual notice to the executive board, then notice to any other employee engaged temporarily at a desk in its main office, and who is accommodating enough to answer inquiries made by people having business in the office, is equally effective, and the statute must be held to mean, not that actual notice must be given "to the city officers having charge of the highways," but that notice may be given to such officers or any of their employees or subordinates.

We think such an interpretation of the statute is not supported by reason or by authority.

*Sprague* v. *City of Rochester* (*supra*) was a case in which the provision of the statute in question was considered, and at pages 26, 28, the court says: "A strict construction would confine the words 'city officers' to officers proper, named as such in the charter, but a liberal construction, in view of the object of the statute, would extend those words to any person 'having charge of the highways' by virtue of power of superintendence delegated to him by the executive board. * * *

"We think that notice of defects in sidewalks, given to a foreman of sidewalks, clothed *with general power to repair* throughout a large district of the city, is notice to a city officer having charge of highways, within the meaning of the charter."

In the case of *Smith* v. *City of Rochester* (46 N. Y. St. Repr. 727) the question was whether knowledge by a sidewalk inspector

of the defective condition of a walk, whose duty it was to examine sidewalks and ascertain for the executive board whether they were out of repair, was sufficient under the charter to make the city liable for damages resulting from such defects; and in sustaining the judgment of nonsuit the court said:· "The knowledge of the inspector cannot be imputed to the members of the executive board, under any rule of law with which we are acquainted. The members of the executive board are themselves but mere agents of the municipality, and the statute has seen fit absolutely to say that the municipal corporation shall not be liable for injuries of this character, unless actual notice has been brought home to the executive board. This, of course, does not mean that a formal notice shall be served upon each or any member of the board; it is sufficient that they have knowledge of the existence of the defects a reasonable time before the injuries complained of were received, to enable an action to be maintained. But the knowledge of any other person whom they may employ is not imputable to the board until it is in some way brought to their attention."

When the same case was again before the appellate court (79 Hun, 174) it appeared that a Mr. Armbruster, a member of the executive board, had frequently passed over the walk where the accident occurred, just prior to the accident, and the evidence tended to show that by the exercise of ordinary care he might have discovered the defect, but that, as a matter of fact, he did not observe and had no knowledge of the defect, and the court said : " It was not sufficient for the plaintiff to show that Mr. Armbruster was negligent in not discovering the defects, but under the provisions of the charter, in order to have been entitled to go to the jury with the case, the evidence must have tended to show that Armbruster had actual knowledge of the defect."

If the negligence of Armbruster in that case, which consisted in failing to discover the defects in a walk over which he passed frequently, did not make the city liable, it is apparent that the omission or negligence of Clark, in failing to notify the executive board of the notice which had been given to him by Wier, or the failure or negligence of the members of the board, in not making rules for the conduct of their business, by which such notice would have been brought to their attention, would not create such liability.

In the *Sprague Case* (*supra*) it is distinctly held that under the provision of the charter in question, notice to a subordinate could not be imputed to the executive board. At page 28 the court says : " This construction gives the city protection against imputed negligence, without relieving it from liability for actual negligence, and thus fulfills the purpose of the statute."

The wisdom or justice of the statute under consideration may be doubtful. It certainly is not in harmony with the legislation applicable to all the other municipalities of the State, with two or three exceptions, and which imposes the duty upon each municipality of exercising reasonable care and diligence to ascertain if its highways are out of repair, and if so to cause them to be put in a reasonably safe condition, and makes it liable for damages resulting from a failure to perform such duty.

But whether the statute is wise or unwise, just or unjust, is not a matter for judicial determination. Its meaning and purpose are clear and obvious. It absolves the city of Rochester from liability for damages resulting from an unsafe and dangerous condition of its highways, unless the executive board having charge of the highways had actual knowledge or notice of such unsafe or dangerous condition for a reasonable time before the happening of an accident occasioned thereby, " but the knowledge of any other person whom they may employ is not imputable to the board until it is in some way brought to their attention."

It follows that the plaintiff's exceptions should be overruled, the motion for a new trial denied and judgment directed for the defendant upon the nonsuit, with costs.

Plaintiff's exceptions sustained and motion for new trial granted, with costs to the plaintiff to abide the event.