[944 NE2d 1098, 919 NYS2d 459]

Dale R. San Marco et al., Appellants, v Village/Town of Mount Kisco, Respondent.

Argued November 16, 2010; decided December 16, 2010

**POINTS OF COUNSEL**

*Michael Fuller Sirignano*, Cross River, for appellants. I. The Village/Town of Mount Kisco failed to meet its duty of care to maintain the parking lot in a reasonably safe condition. (*City of Rochester v Campbell*, 123 NY 405; *Taylor v City of Yonkers*, 105 NY 202; *Preston v State of New York*, 59 NY2d 997; *Bass v City of New York*, 38 AD2d 407, 32 NY2d 894; *Duren v City of Binghamton*, 172 Misc 580, 258 App Div 694, 283 NY 467; *Tompkins v Hunter*, 149 NY 117; *Transit Commn. v Long Is. R.R. Co.*, 253 NY 345; *Doremus v Incorporated Vil. of Lynbrook*, 18 NY2d 362; *Calderon v New York City Hous. Auth.*, 37 AD2d 837; *Haney v First Natl. Stores*, 31 AD2d 547.) II. The Appellate Division incorrectly concluded that the Village/Town of Mount Kisco met its initial burden as the movant for summary judgment. (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851; *Torres v*

*Industrial Container*, 305 AD2d 136; *Britto v Great Atl. & Pac. Tea Co., Inc.*, 21 AD3d 436; *Joachim v 1824 Church Ave., Inc.*, 12 AD3d 409; *Santoliquido v Roman Catholic Church of Holy Name of Jesus*, 37 AD3d 815; *Jablons v Peak Health Club, Inc.*, 19 AD3d 369; *Knee v Trump Vil. Constr. Corp.*, 15 AD3d 545; *Karalic v City of New York*, 307 AD2d 254; *Cody v DiLorenzo*, 304 AD2d 705; *Giamboi v Manor House Owners Corp.*, 277 AD2d 201.) III. The Appellate Division mistakenly applied the *Yarborough v City of New York* (10 NY3d 726 [2008]) causality test of "immediacy" to this slip and fall on ice case. (*Cruz v New York City Tr. Auth.*, 136 AD2d 196; *Roberts v Arrow Boat Club*, 46 AD2d 815; *Oboler v City of New York*, 8 NY3d 888; *Bielecki v City of New York*, 14 AD3d 301; *Smith v County of Orange*, 51 AD3d 1006; *Ricca v Ahmad*, 40 AD3d 728; *Knee v Trump Vil. Constr. Corp.*, 15 AD3d 545; *Baillet v Auerbach*, 277 AD2d 335; *Grizzaffi v Paparodero Holding Corp.*, 261 AD2d 437; *Roca v Gerardi*, 243 AD2d 616.) IV. Summary judgment was improperly granted because appellants came forward with proof raising triable issues of disputed fact. (*City Univ. of N.Y. v Finalco, Inc.*, 93 AD2d 792; *Robinson v Strong Mem. Hosp.*, 98 AD2d 976; *Glick v City of New York*, 139 AD2d 402; *Conte v Brill*, 111 AD2d 210; *Cunningham v General Elec. Credit Corp.*, 96 AD2d 502; *Krupp v Aetna Life & Cas. Co.*, 103 AD2d 252; *Rotuba Extruders v Ceppos*, 46 NY2d 223; *Olivieri v GM Realty Co., LLC*, 37 AD3d 569; *Vilorio v Suffolk Y Jewish Community Ctr., Inc.*, 33 AD3d 696; *Comstock v Bensky*, 275 NY 476.)

*Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger*, Uniondale (*Kathleen D. Foley* of counsel), for respondent. I. The affirmative creation exception to the prior written notice laws properly requires proof that the work performed by the municipality immediately resulted in the creation of a dangerous condition. (*Yarborough v City of New York*, 10 NY3d 726; *Oboler v City of New York*, 8 NY3d 888; *Schleif v City of New York*, 60 AD3d 926; *Weiss v Fote*, 7 NY2d 579; *Amabile v City of Buffalo*, 93 NY2d 471; *Zahn v City of New York*, 299 NY 581; *Hirasawa v City of Long Beach*, 57 AD3d 846; *Diaz v City of New York*, 56 AD3d 599; *Smith v Village of Rockville Ctr.*, 57 AD3d 649; *Lugo v County of Essex*, 260 AD2d 711.) II. Once the Village/Town of Mount Kisco established that it did not receive prior written notice of the dangerous icy condition, the burden shifted to plaintiff to establish that the work performed by the municipality immediately resulted in the creation of the defective condition. (*Yarborough v City of New York*, 10 NY3d 726; *Babenzien v Town of Fenton*, 67 AD3d 1236;

*Groninger v Village of Mamaroneck*, 67 AD3d 733; *Lastowski v V.S. Virkler & Son, Inc.*, 64 AD3d 1159; *Boice v City of Kingston*, 60 AD3d 1140; *Cimino v City of White Plains*, 65 AD3d 1069; *Jason v Town of N. Hempstead*, 61 AD3d 936.) III. There is no merit to plaintiff's new contention that the parking lot at issue is not a "highway" within the meaning of the prior written notice laws, nor is that a proper legal question on this appeal. (*Misicki v Caradonna*, 12 NY3d 511; *Quain v Buzzetta Constr. Corp.*, 69 NY2d 376; *City of Mount Vernon v Mount Vernon Hous. Auth.*, 235 AD2d 516; *Walker v Incorporated Vil. of Freeport*, 52 AD3d 697; *Shannon v Village of Rockville Ctr.*, 39 AD3d 528; *Doherty v Town of Clarkstown*, 233 AD2d 477; *Peters v City of White Plains*, 58 AD3d 824; *Tuzzolo v Town of Hempstead*, 292 AD2d 446; *Bang v Town of Smithtown*, 291 AD2d 516; *Mendes v Whitney-Floral Realty Corp.*, 216 AD2d 540.) IV. Plaintiff's proof failed to establish that the ice patch on which she slipped was, in fact, directly traceable to the snow piles created by the Village/Town of Mount Kisco. (*Mahaney v Neuroscience Ctr.*, 28 AD3d 432; *Simmons v Metropolitan Life Ins. Co.*, 84 NY2d 972; *Scavuzzo v City of New York*, 47 AD3d 793; *Lopez v G&J Rudolph Inc.*, 20 AD3d 511; *McCord v Olympia & York Maiden Lane Co.*, 8 AD3d 634.)

*Timothy J. Keane*, New York City, *Brendan T. Fitzpatrick, David B. Hamm* and *Fiedelman & McGaw*, Jericho (*Andrew Zajac* and *Dawn C. DeSimone* of counsel), for Defense Association of New York, Inc., amicus curiae. The Village/Town of Mount Kisco neither created nor had written notice of black ice upon which plaintiff allegedly slipped. (*MacMullen v City of Middletown*, 187 NY 37; *Amabile v City of Buffalo*, 93 NY2d 471; *Yarborough v City of New York*, 10 NY3d 726; *Oboler v City of New York*, 8 NY3d 888; *Gorman v Town of Huntington*, 12 NY3d 275; *Bielecki v City of New York*, 14 AD3d 301; *Stallone v Long Is. R.R.*, 69 AD3d 705; *Rudden v Bernstein*, 61 AD3d 736; *Carlo v Town of Babylon*, 55 AD3d 769; *Lincourt v Village of W. Winfield*, 55 AD3d 1438.)

### OPINION OF THE COURT

Chief Judge LIPPMAN.

 This appeal presents the question of whether a prior written notice statute acts as an absolute bar to recovery against a municipality where a plaintiff slipped and fell on black ice that formed on the municipality's property. Since the ice hazard at issue may have been created by the municipality's negligent

snow removal efforts, and, if so, the municipality may have known of the hazard, we conclude that Supreme Court properly denied defendant's motion for summary judgment.

Plaintiff Dale San Marco slipped and fell in a parking lot owned by defendant Village/Town of Mount Kisco (the Village) while on her way to work on Saturday, February 5, 2005 at approximately 8:15 A.M. At 4:45 A.M. on the previous morning, the Village had treated the parking lot for ice conditions. However, the Village did not employ a work crew on Saturdays and Sundays to monitor the parking lot for dangerous conditions. It is undisputed that in the interim between the Village's last inspection and salting of the lot early on Friday morning and San Marco's fall on Saturday morning, the air temperature had risen above freezing for approximately 19 hours and then dropped.

As a result of her fall, San Marco suffered a concussion, fractured her sacrum and herniated several cervical discs. Her injuries required a bone graft and surgical installation of a titanium plate affixed to her spine and secured by 13 screws. In May 2005, San Marco and her husband, suing derivatively, commenced this action, seeking to recover damages for her personal injuries. San Marco alleged that she fell on a patch of black ice that was caused by the melting and refreezing of a pile of snow that the Village had plowed into a row of meters adjacent to the parking spaces. San Marco further alleged both that the Village was negligent in plowing the snow so near the parking spaces and negligent in failing to take measures to remedy any dangerous ice conditions that developed.

In response, the Village asserted that Village Law § 6-628 and Village of Mount Kisco Code § 93-47 shielded it from liability in the absence of prior written notice. Pursuant to Village Law § 6-628, a municipality cannot be liable as a matter of law "unless written notice of the defective, unsafe, dangerous or obstructed condition or of the existence of the snow or ice, relating to the particular place, was actually given to the village clerk." The Village consequently established before the motion court that its clerk had not received written notice regarding a defective condition in the parking lot where San Marco fell.

Supreme Court, however, rejected the Village's argument that the action should be dismissed because no one had given written notice of a black ice condition. The court reasoned that the Village's snow removal procedure triggered an exception to the written notice statute, finding a question of fact as to whether

the Village might have created the hazardous ice condition. Under *Amabile v City of Buffalo* (93 NY2d 471 [1999]), a prior written notice statute does not protect a municipality from liability if it can be proven that the "locality created the defect or hazard through an affirmative act of negligence" (*id.* at 474).

The Appellate Division reversed and granted the Village summary judgment, concluding that this Court's holdings in *Yarborough v City of New York* (10 NY3d 726 [2008]) and *Oboler v City of New York* (8 NY3d 888 [2007]) controlled in cases of melting and freezing snow. *Yarborough* and *Oboler*, which respectively dealt with hazards caused by a pothole and an uneven manhole cover, held that the "affirmative negligence" exception to prior written notice statutes applies only where the action of the municipality "immediately results in the existence of a dangerous condition" (*Yarborough*, 10 NY3d at 728, quoting *Oboler*, 8 NY3d at 889). Reasoning that this "immediacy test" extends to snow melting cases, the Second Department found that the Village's action of snowplowing did not amount to "immediate creation" of the hazard that San Marco allegedly encountered (57 AD3d 874, 877 [2d Dept 2008]). Rather, the Court found, "the environmental factors of time and temperature fluctuations . . . caused the allegedly hazardous condition" (*id.*).

The Appellate Division granted plaintiffs leave to appeal. We reverse and deny summary judgment.

■ Reviewing the public policy rationale for prior written notice statutes, as well as the factual distinctions between each category of case, we conclude that the immediacy requirement for "pothole cases" should not be extended to cases involving hazards related to negligent snow removal. In reaching the conclusion that the Village should not be shielded from liability as a matter of law in the present case, we uphold the general underlying purpose of prior written notice statutes. Although it can be harsh for plaintiffs in many cases, it is sensible that the municipality is exempt from liability for injuries on public property unless the municipality knew of the problem. Prior written notice statutes were designed precisely to release municipalities from the "vexing problem of municipal street and sidewalk liability" (*Barry v Niagara Frontier Tr. Sys.*, 35 NY2d 629, 633 [1974]) when they have no reasonable opportunity to remedy the problem (*see e.g. Jagoda v City of Dunkirk*, 43 AD2d 795, 796 [4th Dept 1973] ["Notice provisions . . . are intended to insure that a municipality be given reasonable opportunity to cure defective conditions, the existence of which it could not be expected to know absent some sort of positive apprisal"]).

We recognized the importance of actual notice in *Doremus v Incorporated Vil. of Lynbrook* (18 NY2d 362 [1966]), stating that prior written notice statutes represent "an effort to exempt . . . villages from liability for holes and breaks of a kind which do not immediately come to the attention of the village officers unless they are given actual notice thereof" (*id.* at 366). In keeping with this emphasis, we developed in *Amabile* the exception for the municipality's affirmative creation of the hazardous condition that caused injury.

Then, in *Yarborough* and *Oboler*, we held that a municipality could only be liable for its actions that immediately produced a hazardous condition. These holdings merely reinforced the object of prior written notice statutes to protect municipalities from liability for a road construction or repair, recognizing the difficulty in determining, after the passage of time, whether the initial repair was negligent. At the same time, the affirmative negligence exception addressed situations where a hazard was foreseeable, insofar as the municipality created it by, for example, digging an unmarked ditch in a road or neglecting to cover a street drain.

Considering the present facts in light of the underlying purpose of prior written notice statutes, we find these statutes were never intended to and ought not exempt a municipality from liability as a matter of law where a municipality's negligence in the maintenance of a municipally owned parking facility triggers the foreseeable development of black ice as soon as the temperature shifts. Unlike a pothole, which ordinarily is a product of wear and tear of traffic or long-term melting and freezing on pavement that at one time was safe and served an important purpose, a pile of plowed snow in a parking lot is a cost-saving, pragmatic solution to the problem of an accumulation of snow that presents the foreseeable, indeed known, risk of melting and refreezing.

Moreover, a patch of pavement may gradually and unpredictably deteriorate, making the point at which the efficacy of the initial repair ceases unknown to the municipality. It is therefore understandable that the hazard may escape detection until the municipality receives written notice of the problem. However, in the case of black ice that forms from plowing snow in a municipally owned parking facility, a municipality should require no additional notice of the possible danger arising from its method of snow clearance apart from widely available local temperature data. Indeed, there is evidence that in the case at

bar, the Village treated the same parking lot with salt and sand the day before the accident, in order to limit the hazards of black ice. Thus, the determinative factor in this case should be whether the Village's snow removal efforts created the ice condition on which San Marco fell.

We have recognized the problem of negligent snow removal going back to 1949 in *Zahn v City of New York* (299 NY 581 [1949]), where judgment for the injured plaintiff was affirmed upon similar facts—that a plaintiff fell on black ice that had accumulated as a result of melting and refreezing of snow that the property owner had shoveled on the sidewalk in front of her home. Although this case involved a private defendant, since that time there have been Appellate Division cases holding that a municipal defendant may be liable for a negligent ice condition without prior written notice. For example, on almost identical facts to the present case, in *Smith v County of Orange* (51 AD3d 1006 [2d Dept 2008]), the Second Department held that there was a triable issue of fact "regarding whether the ice upon which the plaintiff slipped was formed when snow piles created by the County's snow removal efforts melted and refroze" (*id.* at 1006; *see also Brownell v City of New York*, 277 AD2d 31 [1st Dept 2000], *lv denied* 96 NY2d 712 [2001]; *Rector v City of New York*, 259 AD2d 319 [1st Dept 1999]; *Glick v City of New York*, 139 AD2d 402 [1st Dept 1988]).

We do not hereby create a new burden on municipalities to remove all snow off-premises in order to avoid liability (*see e.g. Zwielich v Incorporated Vil. of Freeport*, 208 AD2d 920 [2d Dept 1994]). Nor do we seek to render the municipality an insurer of pedestrians. However, at this juncture, plaintiff raises triable issues of fact that compel denial of summary judgment. Primarily, a jury must decide whether San Marco fell on ice created by the Village's snow clearance operation. And relatedly, there are factual issues concerning whether the Village exercised its duty of care to maintain the parking lot in a reasonably safe condition by plowing snow high alongside active parking spaces, and in failing to salt or sand the lot on weekends, despite the fact that it remained open seven days a week.

Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant's motion for summary judgment denied. The certified question need not be answered upon the ground that it is unnecessary.

SMITH, J. (dissenting). The majority opinion seems to say that no written notice requirement applies in this case because the Village should have foreseen that its method of removing snow would create a hazard. This amounts to saying that no written notice is required because the municipality was negligent. But the whole point of written notice legislation is to protect municipalities from liability, even where they are negligent, unless they have received written notice of the hazard in question. The majority decision frustrates this legislative aim, contradicting both the text of the written notice requirements and our recent holdings in *Oboler v City of New York* (8 NY3d 888 [2007]) and *Yarborough v City of New York* (10 NY3d 726 [2008]). I therefore dissent.

Village Law § 6-628 says:

> "No civil action shall be maintained against the village for damages or injuries to person or property sustained in consequence of any street, highway, bridge, culvert, sidewalk or crosswalk being defective, out of repair, unsafe, dangerous or obstructed or for damages or injuries to person or property sustained solely in consequence of the existence of snow or ice upon any sidewalk, crosswalk, street, highway, bridge or culvert unless written notice of the defective, unsafe, dangerous or obstructed condition or of the existence of the snow or ice, relating to the particular place, was actually given to the village clerk and there was a failure or neglect within a reasonable time after the receipt of such notice to repair or remove the defect, danger or obstruction complained of, or to cause the snow or ice to be removed, or the place otherwise made reasonably safe."

Village of Mount Kisco Code § 93-47 is very similar:

> "No civil action shall be brought or maintained against the Village of Mount Kisco for damages or injuries to person or property sustained in consequence of any street, highway, bridge, culvert, sidewalk or crosswalk being defective, out of repair, unsafe, dangerous or obstructed or in consequence of the existence or accumulation of snow or ice upon any street, highway, bridge, culvert, sidewalk or crosswalk, unless written notice of the existence of

such condition, relating to the particular place, had theretofore actually been given to the Board of Trustees of the Village of Mount Kisco and there had been a failure or neglect on the part of said village to cause such condition to be corrected or such snow or ice to be removed or the place otherwise made reasonably safe within a reasonable time after the receipt of such notice."

Written notice requirements of this kind are common in New York. Ordinarily they do not, as these provisions do not, include in their text an exception for hazards the municipalities created. We have nevertheless recognized such an exception—not, as the majority implies, to nullify the requirement in every case in which a municipality negligently fails to foresee the consequence of its actions, but to take account of cases in which a prior written notice requirement would be anomalous. Thus, if a city construction crew digs a hole in the street, it would seem absurd to immunize the city from lawsuits by pedestrians who fall in the hole on the ground that no one gave the city written notice of the hole's existence (*see Doremus v Incorporated Vil. of Lynbrook*, 18 NY2d 362, 366 [1966] [written notice requirements were designed to exempt municipalities from roadway defects "which do not immediately come to the attention of the village officers"]). *Kiernan v Thompson* (73 NY2d 840 [1988]) was a case of this type. Where the City of Ithaca, in removing a tree stump, had left a crack in the sidewalk, we held that "since the City created the crack in the pavement, plaintiff was not required to provide it with prior written notice of the unsafe condition" (*id.* at 842).

Our cases also recognize, however, that the rationale of the exception does not apply where a condition that the municipality creates is not immediately dangerous, but becomes so with the passage of time. In such cases the municipality may be at fault for not foreseeing the danger, but that is irrelevant; there is, by hypothesis, fault by the municipality in every case to which a prior written notice requirement applies. Where the danger is not the immediate result of the municipality's negligent act, it cannot be said with certainty—as it can in the case of the hole the city itself dug—that the municipality actually knew of the danger. In such cases, therefore, the municipality is entitled to prior written notice.

As the Appellate Division explained in *Bielecki v City of New York* (14 AD3d 301, 301-302 [1st Dept 2005]):

"We understand the affirmative negligence exception to the notice requirement to be limited to work by the City that immediately results in the existence of a dangerous condition. . . . If we were to extend the affirmative negligence exception to cases like this one, where it is alleged that a dangerous condition developed over time from an allegedly negligent municipal repair, the exception to the notice requirement would swallow up the requirement itself, thereby defeating the purpose of the Pothole Law."

We adopted the reasoning of *Bielecki* in two recent cases, *Oboler* (8 NY3d at 889-890 [case dismissed where plaintiff failed to show that a height differential between a manhole cover and the adjoining asphalt existed immediately after the city's resurfacing of the roadway]) and *Yarborough* (10 NY3d at 728 [case dismissed where city was allegedly negligent in repairing a pothole, causing deterioration "over time with environmental wear and tear"]). These cases effectively overruled our affirmance several decades ago of the Appellate Division's decision in *Muszynski v City of Buffalo* (33 AD2d 648 [4th Dept 1969], *affd on op below* 29 NY2d 810 [1971]). *Oboler* and *Yarborough* essentially adopt the view of Judge Scileppi, dissenting in *Muszynski*, that written notice is required where "the dangerous condition was not created immediately and consequently" upon a municipality's action (29 NY2d at 813).

The majority here distinguishes *Oboler* and *Yarborough* on the ground that those cases involved defects in the pavement itself, not ice that formed on the pavement. The majority's reasoning is that, while it is "understandable" that deterioration of the pavement resulting from negligent street repair "may escape detection" (majority op at 117), a negligently created pile of snow "presents the foreseeable, indeed known, risk of melting and refreezing" (*id.* at 117). But this confuses the issue of written notice with the issue of negligence. If a risk is neither foreseeable nor known, the municipality is not liable for it at all—the written notice statute is unnecessary. The premise of the plaintiff's case, in a case like *Oboler* or *Yarborough*, is that the municipality should have foreseen, but negligently failed to foresee, that its way of repairing the streets would cause the pavement to deteriorate. There is, in other words, no logical distinction between pavement-defect cases like *Oboler* and *Yarborough* and snow-and-ice cases like this one. The written

notice requirements here apply by their terms to the "accumulation of snow or ice."

Of course it can be said in a case like this—as it could be said in *Oboler, Yarborough, Bielecki* and similar cases—that it is unfair to leave plaintiffs uncompensated for an injury that a municipality negligently caused, but that is what prior written notice requirements do. Such requirements may be harsh, but they are "a valid exercise of legislative authority" (*Amabile v City of Buffalo*, 93 NY2d 471, 473 [1999]). The State, which has created municipalities and has, by abrogating the old rule of sovereign immunity, permitted citizens to bring actions against them, has chosen to limit those lawsuits to cases in which a municipality has received written notice of the hazard complained of. Because the Village here received no such notice, this case should be dismissed.

Judges CIPARICK, PIGOTT and JONES concur with Chief Judge LIPPMAN; Judge SMITH dissents in a separate opinion in which Judges GRAFFEO and READ concur.

Order reversed, etc.