Martin v City of New York (2020 NY Slip Op 07503)





Martin v City of New York


2020 NY Slip Op 07503


Decided on December 15, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 15, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman
Dianne T. Renwick Jeffrey K. Oing Manuel Mendez.


Index No. 21207/18 Appeal No. 12318 Case No. 2020-00287 

[*1]Nicholas Martin, Plaintiff-Appellant,
v
The City of New York, Defendant-Respondent.



Plaintiff appeals from an order, Supreme Court, Bronx County (Mitchell J. Danzinger, J.), entered January 6, 2020, which granted defendant City of New York's motion for summary judgment dismissing the complaint.




Rheingold, Giuffra, Ruffo & Plotkin LLP, New York (Jeremy A. Hellman and Thomas P. Giuffra of counsel), for appellant.
James E. Johnson, Corporation Counsel, New York (Eric Lee and Devin Slack of counsel), for respondent.



RENWICK, J.


Plaintiff alleges that on January 17, 2017, he sustained personal injuries when he fell on the roadway at Seward Avenue in the Bronx. It is uncontroverted that defendant City of New York (City) owned and maintained the accident location. Although plaintiff does not dispute that the City did not receive prior written notice of the alleged roadway defect under the Pothole Law (see Administrative Code of City of NY § 7-201 [c] [2]), he claims that no such notice was required because the City created the defect through an affirmative act of negligence, namely repair work that caused a roadway to become raised and uneven. For the reasons that follow, we find that the motion court erred in granting defendant summary judgment dismissing the complaint.
Where, as here, a municipality has enacted a prior written notice statute, it may not be subject to liability for personal injuries caused by a defective street or sidewalk condition absent proof of prior written notice or an exception thereto (see Poirier v City of Schenectady, 85 NY2d 310, 313 [1995]). "The Court of Appeals has recognized two exceptions to this rule, 'namely, where the locality created the defect or hazard through an affirmative act of negligence [and] where a "special use" confers a special benefit upon the locality' " (Katsoudas v City of New York, 29 AD3d 740, 741 [2nd Dept 2006], quoting Amabile v City of Buffalo, 93 NY2d 471, 474 [1999]).
The affirmative creation exception at issue here "[is] limited to work by the City that immediately results in the existence of a dangerous condition" (Yarborough v City of New York, 10 NY3d 726, 728 [2008] [internal quotation marks omitted] ); see also Oboler v City of New York, 8 NY3d 888, 889 [2007] ; Bielecki v City of New York, 14 AD3d 301, 301-302 [1st Dept 2005]). Thus, while the eventual emergence of a dangerous condition as a result of wear and tear and environmental factors does not constitute an affirmative act of negligence (see Yarborough, 10 NY3d at 728), where the allegedly dangerous condition would have been immediately apparent, the affirmative creation exception applies (see San Marco v Village/Town of Mount Kisco, 16 NY3d 111 [2010]; Bania v City of New York, 157 AD3d 612 [1st Dept 2018]).
Here, plaintiff Nicholas Martin testified consistently  both at a hearing held pursuant to General Municipal Law § 50-H and a deposition  that on January 17, 2017, he slipped and fell on Seward Avenue, between Pugster Avenue and Olmtead Avenue. At the time, plaintiff lived on the same block where his accident occurred. He specified that he fell on the roadway in front of 2007 Seward Avenue. When shown photographs where his accident occurred, he stated that he fell on a square blacktop that contained loose gravel and was raised about one and one-half inches. He had noticed the condition about a month before his accident, when pavement work had been done. Although he did not see who did the road work, his girlfriend [*2]told him that the City had performed the work.
At her deposition, Maria Nievez, plaintiff's girlfriend, testified that at the time of his accident, she lived at 2007 Seward Avenue, which was next door to plaintiff's mother, who lived at 2025 Seward Avenue. Nievez noted that before plaintiff's accident, she called 311 on numerous occasions and complained about a standing water issue in the street. About a month before plaintiff's accident, Nieves stated the City sent workers to remedy the water condition. According to Nieves, however, the City made the condition worse, so that the roadway "started raising" and "tar was all over the place." Nieves noticed that the workers who laid hot tar on the area left it "lumpy," because they failed to roll over it more than once. Nieves was shown photographs taken of the scene of the accident, and she identified the location in the photograph as the same location where the City workers had performed the road repair about a month before the accident.
Nievez testified that she was sure that the City had performed the repair at the same location where plaintiff's accident occurred because she was physically present outside when the work was done. At the time, however, Nievez explained, she was focusing her attention to the work being done. Accordingly, Nievez pointed out, she was not paying particular attention to the markings or insignias on the vehicles that identified them as belonging to the City, other than noticing that they bore writing that read "New York City." She did not observe that the vehicles that arrived with workers were identified with the specific markings "Department of Transportation," presumably, the customary markings for City vehicles doing street repairs.
New York City records showed that City workers had performed road repair work on the same block where plaintiff's accident occurred, and that the work took place at around the same time that Nievez observed City workers performing work. Specifically, in December 2016, road repair orders were generated for work at 2025 Seward Avenue, between Pugster Avenue and Olmtead Avenue, and 2000 Seward Avenue, between Pugster Avenue and Olmtead Avenue. (Nievez observed City workers at 2007 Seward Avenue). These road repairs were conducted on December 12, 2016, 35 days before plaintiff's accident. Three crews (21 workers) were sent to do the work, which took five hours to complete.
Based upon this record evidence, we find that although the City has met its initial burden of establishing the uncontroverted fact that it received no prior written notice of the alleged defective road work, thereby shifting the burden to plaintiff, plaintiff has met his burden of showing that there are triable issues of fact as to whether the City's affirmative negligence created the defect (see Yarborough, 10 NY3d at 728). Specifically, Nievez's (plaintiff's girlfriend's) deposition testimony demonstrates that the City attempted to repair the [*3]road area where plaintiff's accident occurred about a month before the accident, leaving about one and one-half inches of raised and uneven road. While the City records and Nievez's testimony conflict as to the exact location where the City performed road work about a month before plaintiff's accident, it is undisputed that City workers performed road repair work near the vicinity of plaintiff's accident, and around the same time that Nievez observed City workers performing work in the same vicinity. Under the circumstances, Nievez's testimony is sufficient to raise issues of whether the City's affirmative repair of the road negligently created a defective condition causing the repair to fail immediately after it was made.
There is nothing in the record here to indicate that the dangerous condition in question developed over time (cf. Yarborough, 10 NY3d at 728 [affirming summary judgment dismissing the complaint where City lacked prior written notice and "plaintiff's expert found that . . . the condition that caused plaintiff's injury . . . developed over time"]; Speach v Consolidated Edison Co. of N.Y., Inc., 52 AD3d 404, 404 [1st Dept 2008] [same]; Bielecki, 14 AD3d at 301 [affirming dismissal of complaint against City where there was no record evidence of prior written notice to City and plaintiff's expert opined that defect "developed over time"]).
Contrary to defendant's allegations, the fact that Nievez observed markings "New York City" on vehicles that arrived with city workers, rather than the markings "Department of Transportation," does not render her testimony speculative as to whether the City was doing the work on the day in question. Merely pointing to gaps in plaintiffs' proof is insufficient in the context of summary judgment (see Alvarez v. 21st Century Renovations Ltd., 66 AD3d 524 [1st Dept 2009]; DeMilia v DeMico Bros., 294 AD2d 264 [1st Dept 2002]). Rather, any credibility issue that is raised by Nievez's lack of observation of such customary markings should be decided by a jury, not a court on a motion for summary judgment (see DiGiantomasso v City of New York, 55 AD3d 502, 503 [1st Dept 2008] ).
Ultimately, viewing the aforementioned testimonial and documentary evidence in the light most favorable to plaintiff, as we must when we consider defendant's summary judgment motion (see Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 105 [2006]) plaintiff has sufficiently met his burden of raising triable issues of fact as to the City's liability. Accordingly, we conclude that Supreme Court improvidently granted the City's summary judgment motion and that the complaint was improperly dismissed.
Accordingly, the order of Supreme Court, Bronx County (Mitchell J. Danzinger, J.), entered January 6, 2020, which granted defendant City of New York's motion for summary judgment dismissing the complaint, should be reversed, on the law, without
costs, the motion denied, and the matter [*4]remanded to Supreme Court for further proceedings.
All concur.
Order Supreme Court, Bronx County (Mitchell J. Danzinger, J.), entered January 6, 2020, reversed, on the law, without costs, the motion denied, and the matter remanded to Supreme Court for further proceedings.
Opinion by Renwick, J. All concur.
Friedman, J.P., Renwick, Oing, Mendez, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 15, 2020