FANNIE SPRAGUE, Appellant, v. THE CITY OF ROCHESTER, Respondent.

1. CITY OF ROCHESTER — DEFECT IN SIDEWALK — NOTICE OF DEFECT PREREQUISITE TO ACTION FOR INJURY — NOTICE TO FOREMAN OF SIDE-WALKS. Notice of a defect in a sidewalk, given to a foreman of sidewalks, clothed with general power to repair throughout a large district of the city, is notice to a city officer having charge of highways, within the meaning of the provision of the charter of the city of Rochester (L. 1880, ch. 14, § 218, amd. L. 1890, ch. 561) requiring notice "to the city

officers having charge of the highways," of a defect in a sidewalk, as a prerequisite to a right of action to recover damages for an injury caused thereby.

2. MODE AND TIME OF NOTICE OF DEFECT IN SIDEWALK. In satisfying such requirement of notice of a defect in a sidewalk, it is of no importance how the defective condition of the walk is brought to the knowledge of the proper officer, provided he actually knows the fact long enough before an injury happens to enable the city, by reasonable diligence, to remedy the defect.

*Sprague* v. *City of Rochester*, 88 Hun, 613, reversed.

(Argued March 23, 1899; decided April 18, 1899.)

APPEAL from a judgment of the late General Term of the Supreme Court in the fifth judicial department, entered September 3, 1895, denying the plaintiff's motion for a new trial and overruling her exceptions ordered to be heard in the first instance by that court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Eugene Van Voorhis* for appellant. Actual notice of the condition of the sidewalk was given to the city officers having charge of the highways a reasonable time before the happening of the accident in question. (16 Am. & Eng. Ency. of Law, 790; Wade on Notice, §§ 5, 672, 673, 674, 685; *Williamson* v. *Brown*, 15 N. Y. 359; *Curtis* v. *Mundy*, 3 Metc. 405; *Fulton Bank* v. *N. Y. & S. C. Co.*, 4 Paige, 127; *M. L. Ins. Co.* v. *Eschalman*, 30 Ohio, 657; *McCabe* v. *F. B. F. Ins. Co.*, 14 Hun, 604.)

*John F. Kinney* for respondent. Moore, the superintendent of sidewalk inspectors, was not an officer of the city having charge of the highways. (L. 1890, ch. 561, §§ 27, 218; L. 1880, ch. 14, § 149; *Sullivan* v. *Mayor, etc.*, 47 How. Pr. 491; *Smith* v. *City of Rochester*, 46 N. Y. S. R. 727.) The charter of respondent requires that the officers having charge of the highways must have notice. That is, they must have actual information, intelligence or knowledge. This notice cannot be implied from the knowledge of subordinates.

(*McNally* v. *City of Cohoes*, 127 N. Y. 350 ; *Smith* v. *City of Rochester*, 79 Hun, 174; 150 N. Y. 581.) Moore, the foreman of sidewalk inspectors to whom notice is alleged to have been given, was not performing the duties of the superintendent of streets. (L. 1890, ch. 561, § 61.)

Vann, J. This action was brought to recover damages for personal injuries alleged to have been sustained by the plaintiff through the negligence of the defendant in permitting a dangerous hole to remain in a sidewalk on one of the public streets after due notice of its condition. A case was made for the consideration of the jury, provided the notice of the defect in fact given was sufficient to meet the requirements of the city charter. At the close of the plaintiff's evidence the defendant's motion for a nonsuit was granted upon the ground that no notice of any defect in the sidewalk had been given " to the city officers having charge of the highways a reasonable time before " the accident happened. The learned justices of the General Term sustained the nonsuit, but by a divided vote.

The defendant's charter provides for an executive board of three members with varied and extensive powers. They have sole power to let all city contracts and superintend their execution ; to control the construction, improvement, repair and cleaning of streets; to control the water works and the construction of all extensions, repairs and improvements thereof ; to control the fire department and its expenses, with other powers of like nature and importance. They are the commissioners of highways of the city and may appoint and at pleasure remove a superintendent of streets, fix his compensation and prescribe his duties. They " may employ such assistance " and establish such by-laws for their meetings and proceedings as they see fit, provided they are not contrary to law. (L. 1880, ch. 14, §§ 142 to 168 ; L. 1890, ch. 561, §§ 23 to 26.)

It is " the duty of the superintendent of streets to superintend, under the direction of the executive board all work to

be done &ast; &ast; &ast; upon any of the public streets, parks, walks, bridges, sewers, pumps or reservoirs of said city, and to perform, under the direction of said board, such other duties as are by law imposed upon him. If no superintendent of streets shall be appointed, then all powers and duties by this charter imposed upon him shall belong to and be performed by the executive board of said city." (L. 1880, ch. 14, § 61.)

Section 218 provides that "It shall, in all cases, be the duty of the owner of every lot or piece of land in said city to keep the sidewalks adjoining his lot or piece of land in good repair, and to remove and clean away all snow and ice and other obstruction from such sidewalk. The city of Rochester shall not be liable for any injury caused by such sidewalk or any roadway being out of repair, or unlawfully obstructed or dangerous from snow or ice, unless actual notice of the unsafe or dangerous condition thereof has been given to the city officers having charge of the highways a reasonable time before the happening of any such injury. &ast; &ast; &ast; The executive board, superintendent of streets or other officer, or body having charge of the highways within said city, shall have the power to repair any sidewalk where the owner of the property shall neglect or refuse to repair the same for five days" after due notice. The same officers have power to remove snow, ice and other obstructions when the same have remained for twenty-four hours, and a right of action is given to the city against the owner to collect the expense. If he does not pay it after a statement has been mailed to him, an affidavit of the facts is filed with the assessors, who are required to add the amount, with interest at the rate of 15 per cent per annum from the time the affidavit was filed, " to the amount assessed against such land for the next general city tax, and the whole amount of such assessment or expense shall be collected as is provided in reference to general city taxes."

The accident in question happened on the 14th of October, 1892, when there was no superintendent of streets. While the board had no written regulations, there was an established

practice regulating the inspection and repair of sidewalks and streets. Two men, known as foremen of streets, had charge of the street inspectors, and the care, control and repair of the streets. Two other men, known as foremen of sidewalks, had charge of the sidewalk inspectors and of all the sidewalks in the city, one on the east side and the other on the west side of the Genesee river. At the time of the accident Mr. Moore, as foreman, had control of the east side, where the plaintiff was injured. He had a large number of sidewalk inspectors under him, who reported directly to him and not to the board. It was his duty to superintend the inspection and repair of sidewalks and the giving of notice to abutting owners. He was the executive agent of the board with reference to all sidewalks in his district, which included about one-half of the city. When a report was made to him by a sidewalk inspector that a sidewalk was out of repair, he had authority to repair it without consulting the board, and after the repairs were made he reported the expense to the clerk, who issued the bill for collection. Under the rules of the board he had the sole discretion as to whether a sidewalk should be repaired, as well as the extent of the work and the method of doing it. When he found repairs were necessary he caused them to be made upon his own judgment, and the board knew of his work only in a general way. The members of the board did not personally inspect sidewalks for the purpose of making repairs, but left the whole subject to the foremen in charge. The board held meetings every day, adopted resolutions and gave general directions to the heads of the several departments under their charge. At the time under consideration there was no head of the department of streets and sidewalks except the foremen, who acted as superintendents of their respective districts with reference to the subjects under their control. Moore was appointed by the board as a permanent agent or officer and had been in the service for about fifteen years at a fixed compensation. The board furnished the sidewalk inspectors with printed forms to be filled out, signed and served, notifying owners to repair their sidewalks as the basis

of a subsequent assessment in case the owner did not comply.
The sidewalk inspectors had no direct relations with the board,
but were assigned to duty each day by the foremen. When
there was no superintendent of streets the board assigned the
duties of that officer to the foremen of streets and sidewalks
and they then became responsible directly to the board, but
when there was a superintendent they were responsible to him
and he looked after them and saw that they performed their
duties. The foremen of sidewalks had nothing to do with the
streets as such and the foremen of streets had nothing to do
with the sidewalks. The board never took action upon the
subject of repairing a given sidewalk, but had a general stand-
ing order intrusting the duty of repairing all sidewalks to the
foreman of the district who had charge of the repair force as
well as the inspectors. They thus discharged independent
duties, the same as the superintendent of streets when there
was one. (*People ex rel. Satterlee* v. *Board of Police*, 75 N.
Y. 38, 41.) If a complaint was made to a member of the
board that a sidewalk was out of repair he simply telephoned
to the foreman to look after it. In order to construct an
entirely new walk an ordinance of the common council was
required.

On the 3d of September, 1892, a sidewalk inspector discov-
ered the defect in a sidewalk which caused the injury of which
the plaintiff complains. He filled out one of the forms fur-
nished him for the purpose, signed it and endeavored to serve
it upon the owner of the abutting premises, which were vacant,
but not being able to do so, he handed it to Mr. Moore, the
foreman of sidewalks. After giving the date, describing the
lot and mentioning the owner's name, it stated that the side-
walk was in bad repair, and it was a question of fact, under
the evidence, whether any repairs were made during the
period of forty days that intervened before the accident.

The object of the statute in requiring notice to the city
authorities of a defect in a sidewalk, as a prerequisite to a right
of action to recover damages for an injury caused thereby, is
to give the city a reasonable time to repair the defect and pre-

4

vent any injury therefrom. It is to protect the city from lia-
bility for imputed negligence, or negligence that is implied
by law from the lapse of time and the failure to discover the
defect. It is of no importance how the defective condition of
the walk is brought to the knowledge of the proper officer,
provided he actually knows the fact long enough before an
injury happens to enable the city, by reasonable diligence, to
remedy the defect. (*McNally* v. *City of Cohoes*, 127 N. Y.
350, 353; *Smith* v. *City of Rochester*, 79 Hun, 174; 150 N.
Y. 581.) The provision in question is not designed to pro-
tect the city against stale claims, which are covered by another
part of the charter (§ 80), but to protect it against any claim
based on neglect to repair until the city has had actual notice
and a reasonable opportunity to repair.

While the foremen may not be city officers in one sense
they are in another. The charter does not give them a name,
but it impliedly authorizes the executive board to appoint or
employ them and to place them in charge of the highways.
The duties of the board are so numerous and important as to
embrace a large part of the government of the city. Obvi-
ously the legislature did not contemplate that these three men
should look closely after details, but that they should take
general charge, give general directions, and to a great extent
delegate their powers to subordinates. In no other way could
the work of the city be done. It is not reasonable to believe
that the legislature intended that personal notice of every
defect in the entire system of sidewalks should be given them
in order to enable citizens to obtain redress for injuries owing
to a failure to repair. A statute which creates a new rule,
unknown to the common law, for the protection of a city
against its own citizens, should be construed strictly against
the city and liberally in favor of the citizen. A strict con-
struction would confine the words "city officers" to officers
proper, named as such in the charter, but a liberal construc-
tion, in view of the object of the statute, would extend those
words to any person "having charge of the highways" by
virtue of power of superintendence delegated to him by the

executive board.   By providing that the "Executive Board,
Superintendent of Streets or *other officer* or body having
charge of the highways" shall have power to repair defective
sidewalks, the charter clearly contemplates that some officer
or officers other than those specifically named may have
charge of the highways, and thus· by implication authorizes
their appointment.   No officer, except those mentioned by
name, is given any control over the highways directly by stat-
ute, and hence the "other officer" must be one to whom gen-
eral power is delegated by the board.   The charter, after
enumerating certain city officers, adds, "such other officers
*   *   *   as are to be elected or appointed" according to law.
(§. 6.)   As the object of the statute is to give the city notice
so as to enable it to prevent injuries and lawsuits by making
repairs, to whom could more effective notice be given than to
the foreman or superintendent charged with the duty and
furnished with the means of making repairs solely upon his
own judgment?   It must be presumed that the legislature
anticipated the practical effect of its statute when in actual
operation, and hence that it anticipated the practice in fact
adopted by the board through the delegation of their authority
to superintendents of large · departments of city business.
Under the circumstances described, personal notice to a
member of the board would be apt to result, as in practice it
did result, simply in notice by that member to the fore-
man, as the executive officer or agent of the board, thus
having the same effect, but with some loss of time, as if the
notice had been given to the foreman in the first place.   The
board, in addition to its other duties, could not look after
hundreds of miles of streets and sidewalks, nor make every
defect the subject of a special order to notify the owner, and
if he failed to repair, to do the work in the name of the city.
This being so, if the construction contended for by the respond-
ent is correct, we should have the singular result of a notice
to repair defects, given by an inspector in behalf of the board,
made the basis of an assessment against the owner and yet
insufficient to charge the board with notice of the defects in

case an injury happened to a citizen. Can it be held that it did not have actual notice of a fact of which, through its duly authorized representative, it gave actual notice to the owner?

We think that notice of defects in sidewalks, given to a foreman of sidewalks, clothed with general power to repair throughout a large district of the city, is notice to a city officer having charge of highways within the meaning of the charter. This construction gives the city protection against imputed negligence without relieving it from liability for actual negligence, and thus fulfills the purpose of the statute. It is not inconsistent with anything decided in *Smith* v. *City of Rochester* (*supra*), which turned upon imputed notice as contrasted with actual knowledge.

Upon the record now before us the case should have gone to the jury, and, hence, there must be a reversal and a new trial, with costs to abide event.

All concur, except GRAY, J., not voting.

Judgment reversed, etc.