RALPH FERGUSON, Appellant, v. THE CITY OF NEWBURGH,
Respondent.

Second Department, November 10, 1916.

Municipal corporations — negligence — injury by fallen limb obstruct-
ing street — evidence showing negligence of municipal authorities —
failure to indicate obstruction by light at night time.

Action against a city to recover damages for personal injuries received by
the plaintiff who in the night time drove his wagon against the limb of
a tree which was lying across a roadway and which, it was alleged, the
defendant was negligent in not removing within a reasonable time after
it fell, or in permitting the obstruction to remain without a light to indi-
cate its presence. It appeared that the fall of the limb was caused by a
storm of snow and wind of extreme severity which caused many trees in
the city to be blown down, as well as causing various other obstructions
in the public streets. At the time of the accident the limb which injured
the plaintiff had obstructed the street for twenty-nine hours and, it
appeared, had not been located by the authorities within that time
although they had been in the vicinity and could have discovered the
presence of the limb and affixed a light thereon, as they did in other
cases, had their investigation been more thorough, involving only an
expenditure of ten or fifteen minutes additional time. On all the
evidence,

Held, that the jury were justified in finding that the city was negligent
in failing to discover the fallen limb, or in failing to place a light thereon,
and that a judgment for the plaintiff should be affirmed.

APPEAL by the plaintiff, Ralph Ferguson, from a judgment
of the Supreme Court in favor of the defendant, entered in the
office of the clerk of the county of Orange on the 17th day of
December, 1915, upon a dismissal of the complaint by direction
of the court at the close of the case, and also from an order
entered in said clerk's office on the same day setting aside the
verdict of the jury in plaintiff's favor for $2,250, dismissing the
complaint, and directing that the exceptions of the plaintiff be
heard at the Appellate Division in the first instance.

At the close of the case defendant moved to dismiss the com-
plaint. The court reserved its decision and took the verdict of
the jury, which was in plaintiff's favor in the sum of $2,250.
Defendant then moved to set aside the verdict and for a new
trial. The court thereupon ordered that the verdict be set

aside and the complaint dismissed as upon the motion of the defendant made at the close of the whole case, and that plaintiff's exceptions be heard at the Appellate Division in the first instance.

*A. H. F. Seeger*, for the appellant.

*John B. Corwin*, *Corporation Counsel*, for the respondent.

STAPLETON, J.:

The plaintiff was injured, and sued defendant for damages for negligence. The learned justice presiding at the trial ordered that the exceptions of the plaintiff be heard at the Appellate Division in the first instance. This procedure was followed after plaintiff had a verdict for $2,250. The important exception was taken to a direction dismissing plaintiff's complaint at the close of the whole case.

At eleven o'clock on the night of May 28, 1914, the plaintiff, while driving along Powell avenue, a street in the outskirts o the city of Newburgh, but within the city limits, ran into the limb of a tree which was lying across the roadway, and he and his horse and wagon were injured. The night was dark, and the nearest lamp was nearly 200 feet distant. It is undisputed that the limb which obstructed the roadway had fallen during one of the severest storms that ever swept over the city of Newburgh. That storm occurred on the previous afternoon — May twenty-seventh — at three o'clock or a little later. · Trees ranging in diameter from six to ten inches were blown down throughout the entire urban area. The streets were strewn with limbs and branches. Electric light, telephone and trolley wires were down, trolley service was interrupted, and many streets were blocked. The tree from which fell the limb that injured plaintiff stood upon private property facing upon the street. When it fell it completely blocked the roadway. There is evidence that the limb fell before five-forty-five on the afternoon of May twenty-seventh; so that at the time of the accident it had obstructed the street for twenty-nine hours.

To show the diligence with which it endeavored to remove the obstructions caused by the storm the defendant called

Brooker, its superintendent of streets, and Habel, an employee of its park department.

Brooker testified that immediately after the storm he collected all the available men including ashmen and men note regularly employed but subject to call, and started in to clear the streets. He used five teams in the operation. He toured the principal streets to find out most dangerous places. He made a list of the dangerous trees that were reported to him and that he had seen — that is high and dangerous limbs — and turned the list over to the man in charge of the trimming of trees under the park system. They worked after working hours and until dark. They resumed at seven o'clock the next morning and worked all that day, using all the men he could get. He finished the work of cleaning the streets on the night of the twenty-ninth. He first learned of the existence of this fallen branch on the morning of the twenty-ninth. He immediately reported it to Habel, the man in charge of the tree trimming. None of the city's ash teams were in use on Powell avenue on Thursday, the twenty-eighth. Powell avenue is not as well traveled as the streets further down. Late in the afternoon of the twenty-eighth he passed the north end of Powell avenue. · He looked down the avenue from the north, but did not notice any obstruction. He knew that both sides of the street, for a long distance, were lined with trees. · He could not see all the way through Powell avenue from Gidney avenue to the North Plank road, because of the rise in the street. He could have seen all the way through if he had gone up possibly 1,000 feet. It was hardly possible for him to traverse every street in Newburgh in detail with a horse and wagon between the time of the abatement of the storm on the twenty-seventh and the morning of the twenty-ninth. He could have seen through Liberty street from Lander street, but he was not in Lander street. It would have taken him ten or fifteen minutes to go up Liberty and Lander and come down the other side. Lander street was blocked. One could drive through, but there were many branches down. He could not say whether it was blocked entirely. They placed red lights at different places. A lamp could have been tied to the limb in question in a few minutes. He did not have any lamp

there on Wednesday night or on Thursday night. Besides Powell avenue, there were a number of streets that he did not go through. Working with the best speed that could be obtained with men available, it was not until the night of the twenty-ninth that he succeeded in finally clearing the streets. If he had known of this tree in Powell avenue, he would have protected it with a red light. Powell avenue is about on the fringe of building in the city of Newburgh, and further west it is all open land.

Habel testified that after the storm Brooker handed him a list of dangerous and broken limbs. He did all he could that night with his full force of four men, working until a quarter to seven. He started in on the twenty-eighth and worked all that day, and also on the twenty-ninth. They did not finish until the middle of the following week. On the twenty-ninth, two days after the storm, he received from Brooker a list which contained the fallen limb on Powell avenue. He at once sent two men to remove it.

In setting aside the verdict of the jury the learned trial justice said: "So that the plaintiff may have the benefit of the verdict if a higher court should take a different view, and so that it may be retained without the necessity of a new trial, I shall dispose of it by setting aside the verdict and dismissing the complaint, on the ground that, as matter of law, one day is not sufficient time to charge the city with constructive notice of the particular obstruction which existed in this case, which was not a tree belonging to the city, not a street tree, and not the result of any work being done by the city, the exceptions to be heard by the Appellate Division in the first instance; so that the judgment on the verdict is suspended until the case has been reviewed by the higher court on that question of law."

In support of the court's action the respondent relies chiefly on *Cohen* v. *City of New York* (204 N. Y. 424). In that case the plaintiff, riding in her carriage in Prospect Park in the borough of Brooklyn, ran into a gully on the side of the road and was injured. The gully was the result of a severe rain storm which commenced on the morning of October eighth and continued without interruption until after the accident.

The accident occurred at about half after twelve on the afternoon of the same day. Knowledge of the condition of the roadway was brought home to the city's officials at about half after eight on the same morning -- four hours earlier. The court say: "The question, of course, under these circumstances is whether a jury would have had the right to say that the defendant was guilty of negligence · because it did not by barriers or in some other manner guard the defective highway, for it must be conceded that it was impossible to repair the road until the waters receded at some time after the accident. I am of the opinion that it would not have been permissible to allow the jury to say this, and that, therefore, the trial judge was correct in his disposition of the case. * * * The rule in this case, where the defect arose without fault on the part of the city, is that it would not be charged with negligence until lapse of a reasonable time in which to communicate knowledge and notice of the defect and of a reasonable time after such notice and knowledge within which to repair or guard against the same. (*Farley* v. *Mayor, etc., of New York*, 152 N. Y. 222, 226; *Sprague* v. *City of Rochester*, 159 N. Y. 20, 26.) Many times the question whether reasonable diligence has been exercised is one of fact for the jury, but at others, when there is no dispute of fact, the question is one of law. (*Hedges* v. *Hudson River R. R. Co.*, 49 N. Y. 223; *Wright* v. *Bank of the Metropolis*, 110 N. Y. 237, 249.) And in determining how speedily a municipality should be required to act in such a case as this to avert accidents a limit must some time be reached where the period between discovery of the defect and the accident is so short that a jury should not be allowed to say as a question of fact that due diligence has been lacking. I think that the present one is such a case and that the defendant should not be held liable because it failed within about four hours to remedy a defect not extraordinarily dangerous caused by a storm of almost unprecedented severity in a locality not appearing to have been either central or much traveled at that time. It must be assumed that after such a rainfall as this was, there were unusual demands on the city of many kinds and in many localities."

We think the case before us is distinguishable. The defend

ant's officials knew that trees and wires had fallen indiscriminately throughout the city. It was impossible for them immediately to clear all the streets of obstructions. A reasonable mind could determine that it was practicable for them, within a few hours after the storm had abated, to locate all fallen trees and to guard against accidents by affixing lights at the points of danger, and that they could have done this within the twenty-nine hours that elapsed between five-forty-five on the evening of May twenty-seventh and eleven o'clock on the night of May twenty-eighth. They were alive to this duty, for they did place some lights. They made a search for fallen trees, but it could reasonably be found to be a negligent search. Defendant's superintendent of streets knew that Powell avenue was lined with trees. He looked up Powell avenue but could not see all the way because of a rise in the ground. By traveling a thousand feet, at an expenditure of ten or fifteen minutes of time, he could have seen all the way, but he chose not to make the effort.

"It is the duty of the municipal authorities to exercise an active vigilance over the streets; to see that they are kept in a reasonably safe condition for public travel. They cannot fold their arms and shut their eyes, and say they have no notice." (*Todd* v. *City of Troy*, 61 N. Y. 506, 509.)

Dillon on Municipal Corporations (Vol. 4 [5th ed.], § 1718), says that if a municipal corporation, "by its officers or servants, *has the means of knowing* that a street is unfit for travel, and is negligently ignorant of its state, it is guilty of negligence."

Defendant's superintendent of streets had the "means of knowing," but did not adopt the means. He did not fold his arms or shut his eyes, but a jury could say he turned his back. He had actual knowledge of the fall of many trees. The great severity of the storm should have warned him of the possible fall of others. He was in the vicinity of Powell avenue; he looked down part of it; he could have looked down all of it by a slight expenditure of time and energy, but he did not.

The practice after the verdict is somewhat informal. There is an irregular judgment in the record. There is an appeal

from it.   There is an order, but it does not grant a new trial. There is an appeal from it.   Written exceptions not appropriate to a jury trial are incorporated in the record.   But the parties acquiesced in the trial court's final direction that the exceptions be heard here.   As the order of the trial justice does not grant a new trial, we are not embarrassed by the authorities precluding us from entertaining a motion therefor.

We think there is a question of fact, ample evidence to sustain plaintiff's verdict, and that defendant's motion for a new trial should be denied, with costs, and that plaintiff have judgment on the verdict, which is directed.

Present — JENKS, P. J., THOMAS, STAPLETON, MILLS and RICH, J.

Defendant's motion for a new trial denied, with costs, and judgment unanimously directed for the plaintiff on the verdict.