Calabrese v City of Albany (2023 NY Slip Op 05641)

Calabrese v City of Albany

2023 NY Slip Op 05641

Decided on November 9, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 9, 2023

535854
[*1]Henry E. Calabrese, Respondent-Appellant,
v
City of Albany, Appellant- Respondent.

Calendar Date:September 5, 2023

Before:Lynch, J.P., Clark, Aarons, Pritzker and Ceresia, JJ.

Marisa Franchini, Corporation Counsel, Albany (Robert Magee of counsel), for appellant-respondent.
Harding Mazzotti, LLP, Albany (Peter P. Balouskas of counsel), for respondent-appellant.

Lynch, J.P.
Cross-appeals from an order of the Supreme Court (Christina L. Ryba, J.), entered July 20, 2022 in Albany County, which denied plaintiff's motion for summary judgment on the issue of liability and denied defendant's cross-motion for summary judgment dismissing the complaint.
On July 26, 2019, plaintiff was operating his motorcycle on Lark Street in the City of Albany when he lost control after striking a depression in the road and fell. Plaintiff commenced this negligence action seeking damages for the injuries sustained in the accident. Following discovery, both parties filed motions for summary judgment centered on whether defendant received prior written notice of the alleged defect, as required by Code of the City of Albany § 24-1 (A) (hereinafter referred to as Local Law 24-1). Supreme Court denied both motions. Defendant appeals and plaintiff cross-appeals.
We affirm. Where "a municipality enacts a prior written notice statute, unless such notice is duly furnished, a plaintiff may not bring a civil action against [the] municipality for damages as the result of an injury sustained by reason of a defective . . . highway" (Pasternak v County of Chenango, 156 AD3d 1007, 1007 [3d Dept 2017] [internal quotation marks, ellipsis and citation omitted]). There are two recognized exceptions: where a plaintiff can demonstrate "that the municipality affirmatively created the defect through an act of negligence or that a special use resulted in a special benefit to the locality" (Yarborough v City of New York, 10 NY3d 726, 728 [2008]; see Amabile v City of Buffalo, 93 NY2d 471, 474 [1999]). For the affirmative negligence exception to apply, the work must "immediately result[ ] in the existence of a dangerous condition" (Oboler v City of New York, 8 NY3d 888, 889 [2007]; see Yarborough v City of New York, 10 NY3d at 728).
We agree with Supreme Court that Local Law 24-1 is enforceable and requires a showing that prior written notice of a defective street "was actually given to the Commissioner of General Services" (Code of the City of Albany § 24-1 [A]). As originally enacted in 1983, Local Law 24-1 required that notice of a dangerous condition be given to the Commissioner of Public Works. By amendments to the City Code in 1997 and 1998, defendant altered its departmental structure by creating a new Department of General Services (hereinafter DGS), consolidating all the functions of several departments, including the Department of Public Works (hereinafter DPW) (see Code of the City of Albany § 42-98 et seq.). All the personnel and property of DPW was transferred to DGS, which became "responsible for the maintenance and repair of all City streets" (Code of the City of Albany § 42-101). As part of this restructuring, DPW was abolished (see Code of the City of Albany § 42-104). However, in tandem therewith, defendant neglected to correspondingly amend Local Law 24-1 to reflect the restructuring, leaving the Commissioner of DPW as the designee for any prior [*2]written notice.[FN1]
In this context, plaintiff maintains that defendant should be estopped from enforcing Local Law 24-1, for service on the statutory designee would be an impossibility. We do not agree that estoppel should apply to bar defendant from asserting prior written notice as a defense. While prior written notice provisions "are always strictly construed" (Poirier v City of Schenectady, 85 NY2d 310, 313 [1995]), it is manifest that interpreting Local Law 24-1 literally to compel service on a nonexistent officer would serve no meaningful purpose and ignore the full transference of authority to the DGS Commissioner in 1998 (see McKinneys Cons Laws of NY, Book 1, Statutes § 141, Comment at 282-283 [1971 ed] ["The court will not interpret a statute to require an impossibility"]). We decline to do so. For its part, defendant represents without contradiction that it has never endeavored to avoid liability through such a literal enforcement of Local Law 24-1.
Defendant maintains that prior communications concerning potholes made through an online reporting system identified as SeeClickFix (hereinafter SCF) do not qualify as prior written notice under Local Law 24-1 because they were not "sent to or received by the DGS Commissioner." We find this argument both troubling and unavailing. As a starting point, we readily recognize that a notice submitted electronically satisfies the "written" notice component of Local Law 24-1 (see Van Wageningen v City of Ithaca, 168 AD3d 1266, 1267 [3d Dept 2019]). We are also mindful that providing written notice of a street defect to a municipal agent other than the statutory designee does not satisfy the condition precedent criteria of a prior written notice provision (see Gorman v Town of Huntington, 12 NY3d 275, 279-280 [2009] [where written notice was given to an entirely different municipal department than the statutory designee set forth in the prior written notice law at issue]). Here, the record demonstrates that defendant promoted SCF as an online platform to communicate complaints about defective streets. In particular, The Good Neighbor Handbook, which provides a guide to services provided by defendant, directs the Albany community to SCF as "a free and user-friendly mobile app and web tool that allows people to report . . . non-emergency neighborhood issues such as . . . potholes." Such complaints are administratively processed by the DGS front office staff and forwarded to a road division supervisor for an appropriate follow up. In his deposition, the DGS Commissioner described an SCF complaint as a "work order." The record shows that actions taken in response are added to the SCF document, which was the only system DGS used to record complaints about road defects. For his part, the Commissioner explained that he did not personally receive/review the SCF complaints but relied on departmental staff to do so.
In our view, the fact that defendant promoted the SCF program and the DGS Commissioner approved [*3]an internal departmental protocol for processing and responding to SCF complaints satisfies the "actually given to the Commissioner of General Services" requirement of Local Law 24-1 (compare Gorman v Town of Huntington, 12 NY3d at 279). The Commissioner was clearly cognizant of the SCF complaint format, had an SCF account, and was charged with overseeing departmental operations in responding to the complaints. As a practical matter, a municipal commissioner is fully authorized to delegate the handling of such complaints to departmental staff — which is, effectively, what was done here. We recognize that the Fourth Department reached a seemingly contrary conclusion in Horst v City of Syracuse (191 AD3d 1297, 1300-1301 [4th Dept 2021]), with respect to a "CityLine citizen reporting system," but decline defendant's invitation to adopt the reasoning of Horst under the distinguishing facts presented. Unlike the use of SCF complaints in Albany, the record in Horst indicates that the "CityLine complaints were maintained in an electronic format and were separate from the written notices kept in the office of the commissioner" (id. at 1301). We are mindful that the SCF complaint form advises users that the "use of this system . . . does not constitute a . . . valid prior written notice as established under both state and local law." Enforcement of that qualifier, however, would allow defendant to encourage the public to utilize SCF to address real safety concerns, while at the same time deflating the legal impact of such a notice. Defendant cannot have it both ways. After all, a concerned citizen reports a road hazard in the interest of public safety, not to satisfy the criteria of a prior written notice law. Structurally, defendant cannot utilize administrative forms that compromise and/or conflict with the legislatively adopted prior written notice law.
The further question is whether defendant received prior written notice of the defective conditions that actually occasioned plaintiff's accident, which occurred in the vicinity of 67 Lark Street, approximately 30 feet north of the Lark Street/First Street intersection. The record includes SCF complaints for a pothole at 67 Lark Street on October 26, 2018 and November 1, 2018. There are also two SCF complaints in December 2018 for a "deep pothole" at the intersection, and a May 24, 2019 complaint for a "very large pothole" at 65 Lark Street. There is an indication in the record that the 67 Lark Street and intersection potholes were temporarily filled with a cold patch material — repairs that do not trigger the affirmative negligence exception (see Kushner v City of Albany, 27 AD3d 851, 852 [2006], affd 7 NY3d 726 [2006]). Even so, the more compelling factor is that defendant performed an extensive excavation on April 3, 2019 in front of 67 Lark Street to address a water line issue. The corresponding "Repair Report" describes the removal of two street sections measuring 8 by 10 feet and 3 by 12 feet. Whether [*4]or not the earlier SCF pothole complaints gave due notice of the street defect that caused plaintiff's accident, the nature of the April 3, 2019 excavation raises a question of fact as to whether the affirmative negligence exception applies.
Defendant's employee, Francis Kindlon, who served as the supervisor on the April 3, 2019 project, averred that the excavated hole was compacted with clean fill, top layers of crushed stone and then a cold patch. Kindlon averred "that the patch was flat and even with the surrounding road and capable of supporting vehicle traffic." By comparison, plaintiff's expert, Ronald A. Bova, a licensed professional engineer, opined in a supporting affidavit that defendant failed to use appropriate foundational material in backfilling the April 3, 2019 excavation, causing the pavement to sink. He described this as a "precipitous process [that] happened directly following the City's Water Department excavat[ion of] Lark Street on April 3, 2019." At the very least, Bova opined that the excavation "exacerbated the problems by creating additional problems, through further excavation and improper repair of the roadway area on April 3, 2019." Bova further opined that the sinking "would have been immediately apparent," pointing to the May 24, 2019 SCF complaint and a June 3, 2019 internal email involving defendant's water department employees advising that "[t]he patch is sinking. Can we please investigate." Bova measured the depression as approximately 17 by 9 feet stretching into both travel lanes. As for defendant's response, the May 24, 2019 SCF document notes some unspecified action was taken on June 6, 2019. Gary Bohl, the assistant director of operations for DGS, testified in his deposition that as of August 2019 the excavation had yet to be restored but needed to be, given the "she[e]r size" of the area impacted.
In view of the temporal proximity of complaints that the excavation was sinking, and Bova's opinion that this was a "precipitous process," we find that plaintiff has raised a question of fact as to whether the excavation falls within the affirmative negligence exception (see Martin v City of New York, 191 AD3d 152, 155 [1st Dept 2020]; Bania v City of New York, 157 AD3d 612, 614 [1st Dept 2018]; Guss v City of New York, 147 AD3d 731, 733 [2d Dept 2017]; compare Yarborough v City of New York, 10 NY3d at 727-728 [no evidence of repairs for two years prior to accident; expert testimony that pothole developed over time with environmental wear and tear]; Oboler v City of New York, 8 NY2d at 889 [no evidence regarding when roadway was last resurfaced prior to accident]; Bielecki v City of New York, 14 AD3d 301, 301-302 [1st Dept 2005] [hole in pedestrian pathway developed over time]).
Finally, we reject defendant's claim that the April 3, 2019 excavation constituted emergency work for which it is entitled to governmental immunity. To the contrary, a municipality has a proprietary duty to keep its roadways in a reasonably [*5]safe condition (see Turturro v City of New York, 28 NY3d 469, 479 [2016]; Wittorf v City of New York, 23 NY3d 473, 479-480 [2014]). The excavation project here falls within defendant's proprietary responsibilities for which immunity does not apply. We find the parties' remaining contentions unavailing.
Clark, Aarons, Pritzker and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Several months after the subject accident, Local Law 24-1 was amended by substituting the Commissioner of DGS for the Commissioner of DPW.