Calabrese v City of Albany (2024 NY Slip Op 06289)

Calabrese v City of Albany

2024 NY Slip Op 06289

Decided on December 17, 2024

Court of Appeals

Garcia, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 17, 2024

No. 125 

[*1]Henry E. Calabrese, Respondent,
v
City of Albany, Appellant.

Robert Magee, for appellant.
Peter P. Balouskas, for respondent.
City of Syracuse et al., New York State Conference of Mayors and Municipal Officials, amici curiae.

GARCIA, J.

:
Plaintiff was injured when he lost control of his motorcycle on Lark Street in the City of Albany. He brought this lawsuit claiming that the accident was caused by a road defect that the City knew about and had failed to repair. The primary issue on appeal is whether certain reports submitted to the City through an online reporting system called "SeeClickFix" (SCF) served as "written notice" of that defect and, if so, whether those reports were "actually given" to the official designated by statute to receive such notice. Viewing the evidence in the light most favorable to plaintiff, based on the implementation and use of the SCF system by the City and its Department of General Services (DGS), we hold that plaintiff raised a triable issue of fact as to prior written notice to the appropriate City official. We further hold that plaintiff raised a triable issue of fact regarding the affirmative negligence exception to the prior written notice requirement, and that the City lacks governmental immunity from suit. We therefore affirm.

tatutes requiring that a municipality receive "prior written notice" of, and a reasonable opportunity to remedy, roadway defects were designed to address the "vexing problem" of municipal liability for such defects (Amabile v City of Buffalo, 93 NY2d 471, 473 [1999] [internal quotation marks and citation omitted]; see also San Marco v Village/Town of Mount Kisco, 16 NY3d 111, 116 [2010]; Sprague v City of Rochester, 159 NY 20, 25-26 [1899]). Prior notice statutes "are a valid exercise of legislative authority" (Amabile, 93 NY2d at 473 [citation [*2]omitted]; see General Municipal Law § 50-e [4]; Town Law § 65-a; Village Law § 6-628), but because local laws requiring such notice are in derogation of the common law, they are strictly construed against the municipality and "liberally in favor of the citizen" (Sprague, 159 NY at 26; see Laing v City of New York, 71 NY2d 912, 914 [1988]). We have recognized two exceptions to the prior notice requirement—"namely, where the locality created the defect or hazard through an affirmative act of negligence and where a 'special use' confers a special benefit upon the locality" (Amabile, 93 NY2d at 474 [citations omitted]). For the affirmative negligence exception to apply, the locality's negligent act must immediately give rise to the dangerous condition (see Yarborough v City of New York, 10 NY3d 726, 728 [2008]).
Here, at the time of the accident, the City's prior written notice statute provided:
"No civil action shall be maintained against the City for damages or injuries to person or property sustained in consequence of any street . . . being defective, out of repair, unsafe, dangerous or obstructed unless, previous to the occurrence resulting in such damages or injury, written notice of the defective, unsafe, dangerous or obstructed condition of said street . . . was actually given to the Commissioner of Public Works and there was a failure or neglect within a reasonable time after the receipt of such notice to repair or remove the defect, danger or obstruction complained of" (Albany City Code former § 24-1 [emphasis added]).
This version of the statute was enacted in 1983. About fifteen years later, the Department of Public Works was abolished, and its functions were transferred to DGS (see Albany City Code §§ 42-99, 104). The statute was not amended to reflect that reorganization until after plaintiff's injury.
At the time the City's notice statute was enacted, the phrase "written notice" did not, and indeed could not yet, contemplate software applications capable of sending communications from the public over the Internet to municipal officials. We now confront the issue of whether such a relatively recent advance in technology can provide an avenue for written notice to be actually given to the statutory designee pursuant to the City's notice statute.

SCF is an online reporting system maintained by the City that allows users to report, through a software application or website, "anything that they see that should be addressed by any city department." When a member of the public reports an issue in SCF, the system routes it automatically to the appropriate government office. Reports of road defects go to DGS, the agency responsible for road maintenance. Users may provide a description of the defect, its location, and photographs of the condition. Various City officials, including the DGS Commissioner, have encouraged the public to report road defects through SCF. At the same time, presumably anticipating potential liability for unaddressed road defects, the City requires SCF users to accept as a term of use the disclaimer that "use of this system . . . does not constitute a valid notice of claim nor valid prior written notice as established under . . . state and local law."
Once SCF routes a road defect report to DGS, a DGS "front office" employee reviews it and assigns it to the appropriate supervisor for any necessary repair. In turn, the supervisor documents DGS's response by making handwritten notes on a printed copy of the SCF report, and a DGS employee then enters those notes into the SCF system to track and record them. SCF is the only system used by DGS to log, track, and follow up on road defect reports, including all road defect reports received from DGS employees in the field or from members of the public who call or submit reports by regular mail. Outside of SCF, DGS has "[no] other documents pertaining to complaints about street . . . defects." The Commissioner of DGS has access to the SCF system but, as a matter of choice, has "[n]ever personally reviewed any type of complaint from any source pertaining to any road defect[ ]," opting instead to receive a spreadsheet listing reported complaints and work done to address them.
III.
In July 2019, plaintiff was injured when he lost control of his motorcycle on Lark Street in the general area where the City's Water Department had repaired a water main break approximately two months before. In the months leading up to the accident, DGS had received a number of complaints about a defect in the road near the accident site; some were reported through SCF and others were reported by telephone and entered into SCF by a DGS employee pursuant to DGS policy.
Plaintiff brought this action, alleging that the City's negligence caused his injuries. Following discovery, the parties cross-moved for summary judgment. The City argued that prior written notice was not actually given to the [*3]Commissioner of DGS, no exception to the prior written notice statute applied, and the City was immune from suit. Supreme Court denied both motions. First, the court held that an SCF report may constitute prior written notice, but that several issues of fact precluded summary judgment, including which of the complaints were "based upon verbal rather than written communications," "whether the defects described in the S[CF] notifications were the same as, or were otherwise related to, the roadway depression that caused plaintiff's accident," and "whether the manner in which the City excavated, repaired and/or restored the roadway created or exacerbated the defective condition which allegedly caused plaintiff's accident." Supreme Court also rejected the City's governmental immunity argument.
The parties both appealed denial of their respective summary judgment motions, and the Appellate Division affirmed (221 AD3d 1152 [3d Dept 2023]). As relevant here, the Court held that the SCF complaints may constitute written notice actually given within the meaning of the statute and rejected defendant's governmental immunity argument (id. at 1154-1155, 1156). The Appellate Division granted defendant leave to appeal and certified the question of whether it erred by affirming the denial of the City's motion.
IV.
Impossibility As a threshold matter, plaintiff argues that the City's notice statute is unenforceable because it requires that prior written notice be actually given to the Commissioner of Public Works, an office that no longer exists. Compliance with the plain language of the statute was impossible for the approximately twenty-year period from the time the Department of Public Works was abolished to the amendment substituting the DGS Commissioner as the designated official after plaintiff's accident, and therefore, plaintiff argues, any notice requirement during that period should be excused. We decline to read the statute in a manner that would produce such an "objectionable, unreasonable or absurd consequence[]" (Long v State of New York, 7 NY3d 269, 273 [2006]; see McKinney's Cons Laws of NY, Book 1, Statutes § 141 [statutes should not be read to require impossibility]). The relevant statutes abolishing the Department of Public Works make clear that all functions, power, and personnel belonging to that department were transferred to DGS (see Albany City Code §§ 42-101, 42-104). Accordingly, we read the statute, as did the lower courts, to require that prior written notice be actually given to the Commissioner of DGS.[FN1]
Because the prior written notice requirement was not excused by the City's failure to amend the statute, we must address two issues with respect to whether the SCF reports could provide that notice: whether such reports are "written," and, if so, whether the City's implementation and use of the SCF system resulted in those reports being "actually given" to the Commissioner of General Services.
Written Notice
We agree with the courts below that notices submitted electronically through SCF may satisfy the "written notice" component of the statute. Electronic communications fall within the plain meaning of the word "written" (see Black's Law Dictionary [12th ed 2024] [defining "written" as: "(Of words or signs) recorded in visual form of some kind. . . . Expressed in letters, words, etc. on paper or in some other medium. . . . The term is often contrasted with its antonym spoken"]). They serve as "objectively observable and tangible record[s]" that are functionally equivalent to writings inscribed in a physical medium (Bazak Intl. Corp. v Tarrant Apparel Group, 378 F Supp 2d 377, 383-384 [SD NY 2005] [holding that an email can be a writing under the Uniform Commercial Code]). Indeed, the SCF system was the City's sole process for recording road defect reports, including each defect's reported location and the date and time each report was received by DGS, and the system did not route such reports through any third party, consistent with the policy underlying the prior written notice requirement (see Poirier v City of Schenectady, 85 NY2d 310, 313-314 [1995]; see also Dalton v City of Saratoga Springs, 12 AD3d 899, 901 [3d Dept 2004] ["Verbal complaints transcribed to a written telephone message or, here, a work order, do not satisfy the statutory requirement"]). Moreover, any ambiguity in what constitutes a writing under the statute must be strictly construed against the City (see e.g. Laing, 71 NY2d at 914). We therefore hold that a report typed into SCF by a user and then transmitted to DGS is a "written" communication (cf. Van Wageningen v City of Ithaca, 168 AD3d 1266, 1267 [3d Dept 2019] [acknowledging that an email is a "written complaint()" for purposes of prior written notice]; Bochner v [*4]Town of Monroe, 169 AD3d 631, 632 [2d Dept 2019] [recognizing that an email can serve as prior written notice]). However, any notices received verbally, for example via telephone, and memorialized by DGS staff in the SCF system do not qualify as "written" (see Gorman v Town of Huntington, 12 NY3d 275, 280 [2009] ["Nor can a verbal or telephonic communication to a municipal body that is reduced to writing satisfy a prior written notice requirement"]; see also Tortorici v City of New York, 131 AD3d 959, 960 [2d Dept 2015] [request generated from a "311" call and entered by clerk into the computer system was not written notice]). Of course, should a municipality prefer a different definition of "written notice," it may choose to provide one in its prior notice statute (see e.g. Wolin v Town of N. Hempstead, 129 AD3d 833, 834 [2d Dept 2015] [prior written notice statute required that notices be "manually subscribed"]).
Actually Given to the Statutory Designee
In addition to holding that the SCF reports were "written" notice within the meaning of the statute, we also hold that the reports were "actually given" to the Commissioner of General Services. We have made clear that not "every written complaint to a municipal agency necessarily satisfies the strict requirements of prior written notice, or that any agency responsible for fixing the defect that keeps a record of such complaints has, ipso facto, qualified as a proper recipient of such notice" (Gorman, 12 NY3d at 279). The notice at issue in Gorman was made to the agency responsible for fixing the road defect, but that agency was not the locality's statutory designee for prior written notice and was therefore not the proper recipient (see id. at 279-280 [citing cases involving similarly misdirected notices]). By contrast, the notices here went to the appropriate municipal agency, but were not addressed to, or personally reviewed by, the Commissioner of that agency, who is designated by title as the proper recipient (see Albany City Code § 24-1). Nevertheless, we hold, based on DGS's specific process for routing and maintaining the road defect reports received through SCF, that those notices were "actually given" to the statutory designee.
In Sprague v City of Rochester, we accepted the conclusion that notice to a subordinate could provide prior notice to the statutory designee (see 159 NY at 26 ["It is not reasonable to believe that the legislature intended that personal notice of every defect in the entire system of sidewalks should be given (to the city's executive board) in order to enable citizens to obtain redress for injuries owing to a failure to repair"]). There, the prior notice statute designated "the city officers having charge of the highways" as the mandatory prior notice recipients (see id. at 23). We concluded that "the legislature did not contemplate that [those officers] should look closely after details, but that they should take general charge, give general directions, and to a great extent delegate their powers to subordinates" (id.). The officers in Sprague, like the Commissioner here, were empowered to establish unwritten practices regulating the inspection and repair of the streets and sidewalks as they saw fit, delegating authority to foremen to act on their behalf (see id. at 24-25). On these facts, we held that prior notice to a foreperson satisfied the statute (see id. at 28). Lower courts have reached the same commonsense conclusion with respect to notice given to a subordinate of the locality's statutory designee (see generally Elias v City of Rochester, 49 App Div 597 [4th Dept 1900] [notice given to the clerk of the statutory designee was sufficient where the statutory designee could not practicably receive the public's complaints directly and the clerk was empowered by statutory designee to receive and process them], affd without op 169 NY 614 [1902]; see also Kowalski v City of Poughkeepsie, 9 AD2d 685 [2d Dept 1959].
Here, DGS created a system for processing complaints that bypassed the need for the Commissioner's personal review. SCF was promoted by the Commissioner as a tool for reporting road defects within the City and was the only internal system for tracking those complaints and any remedial work done in response. Any written complaints addressed to the Commissioner and actually mailed to DGS would be subject to the same process—that is, they would be routed to the DGS front desk and entered into SCF (cf. Horst v City of Syracuse, 191 AD3d 1297, 1301 [4th Dept 2021] [by comparison, prior notice statute not satisfied by reports submitted via a web-based complaint system that "were maintained in an electronic format and were separate from the written notices kept in the office of the commissioner"]). In sum, DGS used SCF to receive, track, and follow up on notices provided through SCF, as well as notices received through all other channels, and subsequent repairs were then documented in the same system. As a result, we hold that, even though not personally received by the Commissioner, these notices were "actually given" to the statutory designee [FN2]. Accordingly, the SCF reports at issue here could constitute prior written notice. Plaintiff therefore raised a triable question of fact as to whether the City had prior written notice of the defect on Lark Street, precluding the City's motion for summary judgment on that issue.
[*5]V.
Supreme Court also properly determined that issues of fact precluded summary judgment as to whether the City's alleged negligence immediately resulted in a dangerous condition that caused plaintiff's accident—in which case, the prior written notice requirement would not apply. According to a City official, the hole dug in connection with the water main repair was properly backfilled, compacted, and "cold patched," and was "flat and even with the surrounding road and capable of supporting vehicle traffic." On the other hand, plaintiff's expert engineer opined that "there was severe insufficient subbase and asphalt concrete material used to restore the roadway," which "caused dipping or sinking in the roadway, and would have been immediately apparent after the April . . . 2019 work was done." This competing evidence about the adequacy of the City's repair, and whether its consequences were immediately apparent after the repair's completion, required denial of summary judgment on the question of whether the City affirmatively created the defect.
VI.
Finally, we reject the City's contention that, because it was acting in a governmental capacity when it responded to the water main break, it is immune for any resulting negligence. The City is shielded from liability for "discretionary actions taken during the performance of governmental functions" (Valdez v City of New York, 18 NY3d 69, 75-76 [2011] [citation omitted]; see Haddock v City of New York, 75 NY2d 478, 484 [1990]). We have described "governmental functions" as those acts " 'undertaken for the protection and safety of the public pursuant to the general police powers' " (Applewhite v Accuhealth, Inc., 21 NY3d 420, 425 [2013], quoting Sebastian v State of New York, 93 NY2d 790, 793 [1999]). Conversely, a governmental entity acts in "a purely proprietary role when its 'activities essentially substitute for or supplement traditionally private enterprises' " and so "is subject to suit [for such activities] under the ordinary rules of negligence applicable to nongovernmental parties" (id., quoting Sebastian, 93 NY2d at 793). As relevant here, "[a] municipality's proprietary duty to keep its roadways in a reasonably safe condition is well settled" (Turturro v City of New York, 28 NY3d 469, 479 [2016] [citations omitted]). Here, while the City's response to the water main break may have been a governmental function, the City's repair of the excavation on Lark Street was a proprietary function. As a result, the City is not entitled to governmental immunity from suit.
Accordingly, the order of the Appellate Division insofar as appealed from should be affirmed, with costs, and the certified question answered in the negative.
Order insofar as appealed from affirmed, with costs, and certified question answered in the negative. Opinion by Judge Garcia. Chief Judge Wilson and Judges Rivera, Singas, Cannataro, Troutman and Halligan concur.
Decided December 17, 2024

Footnotes

Footnote 1: As the Appellate Division noted in rejecting this argument, "defendant represents without contradiction that it has never endeavored to avoid liability through such a literal enforcement of [Albany City Code former § ] 24-1" (221 AD3d at 1153).

Footnote 2: We note that the SCF disclaimer requiring the user to accept that use of the system does not provide statutory notice does not operate to undo notice actually made in compliance with the statute.